869 F.2d 57
 54 Fair Empl.Prac.Cas. 987,
49 Empl. Prac. Dec. P 38,770
Frank B. BORNHOLDT, Plaintiff-Appellant,
v.
Nicholas F. BRADY, Secretary of the United States Department
of Treasury, and Lawrence B. Gibbs, Commissioner
of the Internal Revenue Service of the
United States of America,
Defendants-Appellees.
 No. 189, Docket 88-6057.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 13, 1988.
Decided Feb. 16, 1989.
 
 Steven G. Eckhaus, New York City (Kelly, Eckhaus & Mohen, New York City, on the brief), for plaintiff-appellant.
 Ellen B. Silverman, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., Nancy Kilson, Asst. U.S. Atty., New York City, on the brief), for defendants-appellees.
 Miller, Singer, Raives & Brandes, P.C. (Alfred Miller, Steven S. Honigman, Peter N. Greenwald, Adam E. Budish, New York City, Steven S. Zaleznick, Christopher G. Mackaronis, Cathy Ventrell-Monsees, Washington, D.C., of counsel), for amicus curiae American Ass'n of Retired Persons.
 Before MESKILL, KEARSE, and MAHONEY, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff Frank B. Bornholdt, a former employee of the Internal Revenue Service ("IRS"), appeals from a final judgment of the United States District Court for the Southern District of New York, Louis L. Stanton, Judge, dismissing his complaint seeking declaratory, injunctive, and monetary relief against IRS and the Department of the Treasury (collectively the "Government") for (1) employment discrimination on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq. (1982 & Supp. IV 1986) ("ADEA" or the "Act"), and (2) termination of his employment as reprisal for presenting his age-discrimination claim to an administrative agency, in violation of the ADEA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. (1982) ("Title VII"), and the Civil Service Reform Act of 1978, 5 U.S.C. Sec. 2302(b) (1982). The district court summarily dismissed the complaint as time-barred because it was not filed within 30 days after Bornholdt received notice of final administrative action on his claims. On appeal, Bornholdt contends principally (1) that his claims were not governed by a 30-day limitations period, (2) that even if a 30-day period is applicable, principles of equitable tolling or equitable estoppel should be applied to extend the period, and (3) that in any event, the present suit is timely because it relates back to an earlier lawsuit. For the reasons below, we affirm the judgment insofar as it dismissed the claim of reprisal but vacate and remand for further proceedings on the claim of age discrimination.
 
 I. BACKGROUND
 
 2
 Bornholdt was employed by IRS as a revenue officer from 1966 until April 1983. On March 15, 1982, his 62nd birthday, he became eligible for retirement. He contends that in June 1981, IRS commenced discriminating against him because of his age and that it has retaliated against him for complaining of age discrimination. These contentions have been the subject of numerous administrative and judicial complaints.
 
 A. The First Administrative Filings
 
 3
 In May 1982, Bornholdt filed a complaint with the IRS Equal Employment Opportunity Office ("IRSEEO"), charging that between June 1981 and April 1982, IRS had engaged in a series of acts designed to coerce him to retire. These included the issuance of a 60-day "notice of disciplinary action" stating that his job performance was inadequate. Bornholdt contended that the notice was disingenuous and was designed to mask IRS discrimination against him because of his age (the "age-discrimination claim").
 
 
 4
 In July and October of 1982 and in March and April of 1983, Bornholdt filed four additional claims with IRSEEO. Each claim alleged that IRS had taken an unlawful action against him in reprisal for his having filed the May 1982 age-discrimination complaint (the "reprisal claims"). The last such reprisal claim asserted that IRS had terminated Bornholdt's employment effective April 15, 1983. The claims filed by Bornholdt with IRSEEO in 1982 and 1983 were not quickly decided.
 
 
 5
 In May 1983, Bornholdt filed a petition with the Merit Systems Protection Board ("MSPB"), seeking to appeal IRS's April 1983 decision to terminate his employment on the ground that the termination was the result of age discrimination and unlawful reprisal. MSPB dismissed the petition for lack of jurisdiction, ruling that because Bornholdt had filed the same claim with IRSEEO, MSPB had no power to entertain the claim unless IRSEEO had rendered a decision or 120 days had elapsed without a decision. Since neither condition was fulfilled, MSPB dismissed Bornholdt's petition without prejudice.
 
 
 6
 B. The First Lawsuit and the First IRSEEO Decision
 
 
 7
 In June 1983, after giving the Equal Employment Opportunity Commission ("EEOC") notice of his intent to sue, Bornholdt commenced a federal civil suit in the Southern District of New York against the Department of the Treasury, IRS, and Bornholdt's supervisor at IRS, pursuing his claims of age discrimination and reprisals ("Bornholdt I "). In September 1983, the defendants moved to dismiss on the ground, inter alia, that no final administrative action had been taken on these claims. In July 1984, the court dismissed the action on the ground that IRSEEO had not rendered a final decision on Bornholdt's claims and that Bornholdt thus had not exhausted his administrative remedies. Bornholdt v. Department of Treasury, 83 Civ. 4596 (S.D.N.Y. July 20, 1984) (Gagliardi, J.).
 
 
 8
 Unbeknownst to Bornholdt and the court, however, prior to the dismissal of Bornholdt I, IRSEEO had in fact finally decided Bornholdt's age-discrimination claim. In November 1983, IRSEEO had issued a "proposed disposition" concluding that this claim was not supported by the evidence. This preliminary decision, which made no mention of the reprisal claims, apparently was received by Bornholdt during the pendency of Bornholdt I and was disclosed to the court. See id. at 6 n. 4. IRSEEO proceeded to adopt its proposed disposition as its final decision in March 1984. However, IRSEEO did not inform Bornholdt of this final decision for nearly two years. Nor did defendants IRS and the Department of the Treasury, of which IRSEEO was part, disclose the existence of this March 1984 decision to the court. As a result, Judge Gagliardi dismissed Bornholdt I in July 1984, believing that "the agency has yet to make a final determination on the matter." Id.
 
 
 9
 C. Additional Administrative and Judicial Filings
 
 
 10
 While Bornholdt I was pending, Bornholdt filed two additional appeals with MSPB. Both were dismissed without prejudice pending resolution of the court litigation. Following the district court's dismissal, Bornholdt renewed his MSPB appeal challenging his termination by IRS. A hearing was held, at the conclusion of which the MSPB hearing officer ruled orally that Bornholdt had "failed to prove that the agency had committed harmful error requiring reversal." Bornholdt v. Department of the Treasury, Case No. NY07528510115 (MSPB Initial Decision, Feb. 11, 1985). Upon the announcement of this ruling, however, Bornholdt moved to withdraw his appeal with prejudice. His motion was granted, and in February 1985, MSPB accordingly dismissed his appeal with prejudice. Id.
 
 
 11
 In May 1985, still unaware that IRSEEO had finally denied his age-discrimination claim in March 1984, Bornholdt returned to the district court, this time seeking a writ of mandamus to compel IRSEEO to decide his age-discrimination and reprisal claims ("Bornholdt II "). In response, the Department of the Treasury apparently informed the court that IRSEEO had in fact already decided the age-discrimination claim, as the court stated as follows:
 
 
 12
 Plaintiff has received a final agency decision with respect to his first complaint [age discrimination]. The Court notes that while plaintiff's subsequent complaints have been pending before the IRS for over two years, there is no statutory time limit within which the IRS must issue final decisions. Moreover, at least some of the delay can be attributed to the filing of parallel actions by plaintiff and his failure to respond to IRS communications.
 
 
 13
 The Court is mindful of the work load confronting administrative agencies and commissions. Nonetheless, the day of judgment must come; plaintiff is entitled to final decisions on all of his complaints, not just the one filed in May 1982.
 
 
 14
 Bornholdt v. United States Department of Treasury, 85 Civ. 3757 (S.D.N.Y. Jan. 8, 1986) (Weinfeld, J.). Judge Weinfeld dismissed the mandamus petition without prejudice to its renewal if no decision were forthcoming on the reprisal claims within a reasonable time.
 
 
 15
 By letter dated January 24, 1986, received by Bornholdt on February 10, 1986, IRSEEO finally notified Bornholdt that his age-discrimination claim had been denied by the agency on March 6, 1984. By letter dated April 3, 1986, IRSEEO notified Bornholdt that it was "cancel[ing]" his reprisal claims "for lack of jurisdiction" because MSPB had taken jurisdiction of those claims.
 
 
 16
 On or about April 16, 1986, Bornholdt sent the EEOC a notice of his intent to bring suit on the discrimination and reprisal claims. He was not heard from again for some 10 months.
 
 D. The Present Lawsuit
 
 17
 The present suit was commenced in February 1987. The complaint asserted two claims: the first for age discrimination, in violation of the ADEA, and the second for termination of employment as unlawful retaliation, in violation of the ADEA, Title VII, and the Civil Service Reform Act.
 
 
 18
 The Government moved to dismiss asserting, inter alia, that the district court lacked subject matter jurisdiction because the complaint was time-barred. It contended that Bornholdt was required to commence suit within 30 days after he received notice of final agency action on his claims and that his complaint, filed 10-12 months after receipt of the IRSEEO final decisions, and nearly two years after the MSPB final dismissal, was untimely.
 
 
 19
 Bornholdt opposed the motion, arguing principally (1) that his suit was timely because he had filed a notice-of-intent-to-sue within 30 days of receiving notice of the final IRSEEO action and had thereafter commenced suit within the limitations period "as equitably tolled," and (2) that the Government was "equitably estopped" from raising a statute-of-limitations defense because it had failed to give him timely and proper notice of the final decision by IRSEEO. In addition, Bornholdt noted (a) the similarity between his present complaint and the complaint in Bornholdt I which had been dismissed for failure to exhaust administrative remedies, (b) the fact that administrative remedies for his age-discrimination claim had been exhausted prior to the dismissal of that case because IRSEEO had theretofore finally decided that claim, and (c) the fact that he, the court, and the Assistant United States Attorney in Bornholdt I were all unaware of that final agency decision.
 
 
 20
 In an Opinion and Order dated January 22, 1988 ("Opinion"), Judge Stanton granted the Government's motion to dismiss, ruling that (1) the ADEA requires that a civil action based on age discrimination be filed within 30 days after the claimant has received notice of a judicially reviewable agency action, and (2) Title VII requires that suit on a reprisal claim also be filed within 30 days after receipt of a final agency decision on that claim. He found that Bornholdt had received notice of final agency action on his age-discrimination claim on February 10, 1986, and of his reprisal claims on April 3, 1986, and that his commencement of suit in February 1987 was untimely. The court rejected Bornholdt's contention that the suit was made timely by his prompt service of notice of intent to sue, finding that "[t]he notice of his appeal rights that Bornholdt received along with notice of the final agency decision state[d] that suit must be brought within 30 days." Opinion at 8. The court rejected the equitable-tolling argument on the ground that "[t]he statutes are clear that his claim had to be brought within 30 days of notification of the final agency action," id. at 9, and that where the defendant employer is the federal government, the 30-day limitation is jurisdictional and cannot be expanded.
 
 
 21
 Judgment was entered dismissing the complaint, and a notice of appeal was filed. That notice was withdrawn without prejudice, however, in order to permit the district court to rule on a motion by Bornholdt pursuant to Fed.R.Civ.P. 60(b) to reopen the judgment on the ground that the "judgment was based upon mistakes of fact and law."
 
 
 22
 In support of his Rule 60(b) motion, Bornholdt pointed out, inter alia, that the ADEA does not contain a statute of limitations for claims against the federal government, and he disputed the finding that he had been given notice of a 30-day limitations period. He submitted an affidavit stating that he had never received any such notice; that in fact when he filed his administrative complaint of age discrimination in 1982, he received a notice from the EEOC stating that "any civil action must be filed within six years of occurrence of the discriminatory act" (Exhibit A to Bornholdt Affidavit dated March 21, 1988 ("1988 Aff.")); and that when IRSEEO informed him of its final decisions on the age-discrimination and reprisal claims, it sent him notices stating that " 'If yours is a complaint of age discrimination, the aforementioned 30 day [sic ] limit may not apply' " (1988 Aff. p 3; see id. Exhibit B).
 
 
 23
 In a Memo Endorsed, dated May 9, 1988, Judge Stanton denied the motion to reopen the judgment, stating that the "time within which to bring suit after the denial of an administrative claim would be borrowed from the analogous Title VII," and that the Title VII time limitation is 30 days. He concluded that "[s]ince this action was not commenced until over ten months after the latest date on which plaintiff received notice of adverse final agency decision, it is untimely under any view."
 
 
 24
 Thereafter, Bornholdt's appeal to this Court was reinstated.
 
 II. DISCUSSION
 
 25
 On appeal, Bornholdt contends that his present complaint was timely filed because (1) claims of age discrimination and retaliation are not governed by a 30-day statute of limitations; (2) if there is such a 30-day limitation, either the period was equitably tolled or the government is estopped from enforcing it against him; and (3) in any event, his present suit should be deemed to relate back to the time of Bornholdt I. For the reasons below, we conclude that (1) Bornholdt is not entitled to pursue his reprisal claim, and (2) insofar as the complaint alleged an age-discrimination claim, it was timely because the present suit relates back to Bornholdt I.
 
 
 26
 A. The Claim of Employment Termination as Reprisal
 
 
 27
 Preliminarily, we note that Bornholdt's complaint invoked both the ADEA and Title VII as bases for his reprisal claim. Title VII plainly does not apply, since that statute governs complaints relating only to discrimination on the basis of race, color, religion, sex, or national origin, and not discrimination on the basis of age. See 42 U.S.C. Sec. 2000e-2. While the ADEA governs claims of age discrimination, the availability of a private action against the government under that Act for retaliation is not clear, since 29 U.S.C. Sec. 633a (which, as discussed in greater detail in Part II.B.1. below, is the exclusive ADEA provision governing suits against the government) does not mention retaliation. Though it may be inferred that the breadth of the language of Sec. 633a, requiring that federal government employment decisions affecting covered personnel be "free from any discrimination based on age" (emphasis added), is sufficiently broad to prohibit age-related retaliation, cf. White v. General Services Administration, 652 F.2d 913, 917 (9th Cir.1981) (finding similar Title VII provision requiring that government employment decisions be made "free from any discrimination," 42 U.S.C. Sec. 2000e-16(a), broad enough to authorize action for retaliation related to any discrimination prohibited by Title VII); Porter v. Adams, 639 F.2d 273, 277-78 (5th Cir.1981) (same), we need not decide this question here, because Bornholdt also invoked the Civil Service Reform Act, 5 U.S.C. Sec. 2302(b)(9). That section prohibits supervisory government employees from "tak[ing] or fail[ing] to take any personnel action against any employee or applicant for employment as a reprisal for the exercise of any appeal right granted by law, rule, or regulation." Bornholdt's allegation that he was fired by IRS as reprisal for filing his age-discrimination charge with IRSEEO plainly states a claim under Sec. 2302(b)(9).
 
 
 28
 Nonetheless, we conclude for the reasons below that Bornholdt's claim for reprisal was properly dismissable. A person claiming to be the victim of age discrimination and retaliation by his government employer may pursue his claim in any of a number of ways, though generally not in more than one way simultaneously. He may commence a court action, provided he has filed a notice-of-intent-to-sue with the EEOC at least 30 days prior to bringing suit. See 29 U.S.C. Secs. 633a(c), (d). Alternatively, he may pursue his claim through an administrative agency. EEOC regulations governing equal employment in the federal government, set out in 29 C.F.R. Part 1613, provide that a claim of discrimination or reprisal may be pursued either before an equal opportunity agency created by the employing agency ("agency EEO") or before MSPB, but not before both simultaneously. 29 C.F.R. Secs. 1613.402, 1613.403 (1988) ("[a]n aggrieved person may initially file [such] a ... complaint with an agency, ... or (s)he may file a[n] ... appeal directly with the MSPB, pursuant to 5 CFR 1201.151, but not both"). The claimant is deemed to have elected to proceed in whichever administrative forum he has filed first. 29 C.F.R. Sec. 1613.403. Though simultaneous administrative proceedings thus are not authorized, the regulations also provide that if the claimant files first with the agency EEO and that office takes no action on the claim within 120 days, the claimant may then appeal to MSPB. Id. Sec. 1613.405(e); see 5 C.F.R. Sec. 1201.154(a)(2) (1988). If the employee chooses to proceed before MSPB after not receiving a decision from the agency EEO in 120 days, the agency EEO may cancel the employee's claim before the agency EEO. 29 C.F.R. Sec. 1613.405(b).
 
 
 29
 With respect to the need to exhaust these remedies, most courts of appeals have held that a claimant who has commenced a proceeding before an administrative agency must allow the administrative proceeding to be completed before he brings a court action. See, e.g., Rivera v. United States Postal Service, 830 F.2d 1037 (9th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988); Castro v. United States, 775 F.2d 399, 404 (1st Cir.1985); Purtill v. Harris, 658 F.2d 134, 138 (3d Cir.1981), cert. denied, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983). One circuit court has ruled to the contrary, reasoning that since an ADEA claimant is allowed to sue without ever initiating an administrative proceeding, he may also, if he does initiate such a proceeding, bring a court action without allowing the administrative process to be concluded. See Langford v. U.S. Army Corps of Engineers, 839 F.2d 1192, 1194-95 (6th Cir.1988). Consistent with this view, the current EEOC regulations dealing with age-discrimination claims provide that the "filing of a civil action ... terminates [agency] processing" of the matter. 29 C.F.R. Sec. 1613.513 (1988). This regulation, however, applies only to court actions filed after November 30, 1987. See 52 Fed.Reg. 41,920 (1987). Thus, the Langford view that exhaustion is not required even if the ADEA claimant has initiated administrative proceedings is undoubtedly correct for suits commenced after November 30, 1987, since otherwise the claimant who pursues both avenues would find both automatically closed. Bornholdt's reprisal claim, however, must be considered within the regulatory framework that applied at the time he commenced his suits, and that framework provided explicitly that the filing of a civil action "does not" terminate the agency proceeding. See 29 C.F.R. Sec. 1613.513 (1987). Within that framework, i.e., with the agency required to proceed with a pending proceeding notwithstanding the filing of a civil action, we think the sounder view is that an age-discrimination claimant who sued prior to December 1, 1987, was required to allow the administrative proceeding to be concluded before bringing suit. As the Third Circuit has put it, "the pragmatic, prudential reasons" for requiring exhaustion once an administrative review process has been put inexorably in motion are that allowing a plaintiff to walk away from the administrative proceeding he has initiated "would tend to frustrate the ability of the agency to deal with complaints," and "would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation and conciliation." Purtill v. Harris, 658 F.2d at 138.
 
 
 30
 In light of these principles, Bornholdt's reprisal claim was properly dismissed by the district court, for Bornholdt began but never completed the administrative pursuit of that claim. First, he filed the claim with IRSEEO in April 1983; in May 1983, he filed essentially the same claim with MSPB. Under the regulations discussed above, MSPB properly dismissed the claim at that time for lack of jurisdiction since IRSEEO had not decided the claim and less than 120 days had elapsed. The claim was refiled with MSPB in November 1984, and since by then the requisite time had elapsed without a decision from IRSEEO, MSPB could, and did, take jurisdiction (thereby allowing IRSEEO to cancel the reprisal claim theretofore filed with it, which it eventually did). MSPB, however, never rendered a final decision on the merits of the claim. Though a hearing was held and the hearing officer announced his ruling that Bornholdt had failed to show that IRS's actions toward him were improper, this was not a final decision of MSPB, for Bornholdt had the right to seek review within that agency. See 5 C.F.R. Sec. 1201.114(a) (1988). Rather than appealing this decision or allowing the hearing examiner's decision to become the final decision of MSPB through the lapse of time, see id. Sec. 1201.113, Bornholdt decided to forestall a final agency decision on the merits of his claim by withdrawing the claim.
 
 
 31
 Thus, though the order of the MSPB dismissing the retaliation claim with prejudice ended the proceedings before that agency, it was not a "final" decision as that term is used in analyzing exhaustion and reviewability, since MSPB did not decide the merits of Bornholdt's claim. See Ballentine v. Merit Systems Protection Board, 738 F.2d 1244, 1246 (Fed.Cir.1984); cf. 29 C.F.R. Sec. 1613.281 (1988) ("the decision of an agency shall be final only when the agency makes a determination on all of the issues in the complaint"). Bornholdt having commenced the administrative review of his reprisal claim but having aborted a final administrative decision on the merits, he cannot now obtain a judicial resolution of the merits of that claim. See Castro v. United States, 775 F.2d at 404.
 
 B. The Claim of Age Discrimination
 
 32
 Bornholdt's claim for age discrimination, in contrast, was administratively exhausted when IRSEEO finally decided it in March 1984. The question as to this claim is whether the present suit is time-barred.
 
 1. The Applicable Statute of Limitations
 
 33
 The ADEA, enacted in 1967, generally prohibits employers, as that term is defined in 29 U.S.C. Sec. 630(b), from discriminating against employees over the age of 40 on the basis of their age. See 29 U.S.C. Secs. 621-634. Section 633a, which was added to the ADEA in 1974, prohibits such age discrimination by federal government agencies including IRS:
 
 
 34
 All personnel actions affecting employees or applicants for employment who are at least 40 years of age ... in executive agencies as defined in [5 U.S.C. Sec. 105 (1982), whose list includes the Department of the Treasury, of which IRS is part] ... shall be made free from any discrimination based on age.
 
 
 35
 29 U.S.C. Sec. 633a(a). Sections 633a(b) and (c) provide for enforcement by the government and private claimants, respectively, of the rights conferred by Sec. 633a(a).
 
 
 36
 Section 633a does not include a statute-of-limitations provision, and precisely what limitations period applies to Bornholdt's age-discrimination claim is not clear. When a statute does not specify a limitations period, we "do not ordinarily assume that Congress intended that there be no time limit on actions at all." DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). Citing DelCostello, the Government argues that where the statute creating the right of action contains no limitations period, we should " 'borrow' the most suitable statute or other rule of timeliness from some other source." Id. We are not persuaded that this is invariably the proper course in suits against the federal government. The Supreme Court has used the borrowing device principally with respect to federal statutory causes of action brought against private entities, not against the government. With respect to private defendants, borrowing is often necessary because as to them there is no general federal statute of limitations. There is, however, a general six-year statute of limitations governing nontort civil actions against the federal government. See 28 U.S.C. Sec. 2401(a) (1982); Blassingame v. Secretary of the Navy, 811 F.2d 65, 70 (2d Cir.1987). Thus, the most fundamental reason for borrowing a statute of limitations does not seem applicable to a suit against the federal government.
 
 
 37
 The existence of Sec. 2401 as a catchall provision, however, does not necessarily mean that Congress intended the six-year period to be applied whenever a substantive statute does not specify a limitations period. Cf. American Postal Workers Union v. United States Postal Service, 823 F.2d 466, 474 n. 11 (11th Cir.1987). If we were able to fathom a different congressional intent, we would apply the limitations period we believed Congress intended. Accordingly, we will explore the matter of whether Congress had a discernible intent with respect to the statute of limitations to be applied to ADEA claims against the government.
 
 
 38
 On the surface, it would seem that the most logical source from which to borrow would be other provisions of the ADEA. We think Congress has plainly indicated that it did not intend us to borrow from those provisions by the manner in which it structured Sec. 633a. When the ADEA was enacted in 1967, it did not apply to federal agency employers. The period of limitations in the original Act incorporated by reference the two-and three-year limitations periods that were part of the Portal-to-Portal Act, 29 U.S.C. Sec. 255. See 29 U.S.C. Sec. 626(e) ("Section[ ] 255 ... shall apply to actions under [ADEA]."). When Congress amended the ADEA in 1974 to make it applicable to the federal government, it did not merely add the government to Sec. 630(b)'s definition of employers subject to the Act, which would have subjected claims against the government to two-and three-year limitations periods. Rather, it added a relatively self-contained section, 29 U.S.C. Sec. 633a, which prohibits age discrimination by the designated federal agencies as indicated above, and proceeds in various subsections to provide for, inter alia, enforcement by the EEOC and by aggrieved individuals. To ensure the insularity of Sec. 633a, Congress added a subsection in 1978 which, with one exception not pertinent here, expressly forbids incorporation of any other ADEA provision into Sec. 633a:
 
 
 39
 Any personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this chapter [i.e., ADEA], other than the provisions of section 631(b) of this title and the provisions of this section.
 
 
 40
 29 U.S.C. Sec. 633a(f). The legislative history states that Sec. 633a(f) was added to "make[ ] it clear that section [633a] ... is independent of any other section of [the ADEA]." H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 11 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 528, 532; see Lehman v. Nakshian, 453 U.S. 156, 168, 101 S.Ct. 2698, 2705, 69 L.Ed.2d 548 (1981) (Sec. 633a is "self-contained and unaffected by other sections, including those governing procedures applicable in actions against private employers"). Thus, it seems plain that Congress intended us not to look to 29 U.S.C. Sec. 626 and borrow, for suits against the government, the ADEA limitations periods found there.
 
 
 41
 The Government contends that Congress nonetheless must have intended ADEA suits against the government to be governed by a limitations period shorter than six years, and it urges us to apply the 30-day limitations period set forth in Title VII, as the federal statute most closely analogous to the ADEA. Title VII, prohibiting employment discrimination on the basis of race, color, religion, sex, or national origin, does in many respects parallel the ADEA. And, like the ADEA, Title VII originally did not apply to the federal government. In 1972, when Congress amended Title VII to extend its protection to federal employees, see Equal Employment Opportunity Act of 1972, Pub.L. No. 92-261, Sec. 11, 86 Stat. 103, 111, Senator Lloyd Bentsen introduced a bill to similarly expand the ADEA, see 118 Cong.Rec. 7745 (1972), pointing out the common roots and similar mechanisms of the two statutory schemes, see id. at 15895, 24397. Relying in part on this history, the Supreme Court has noted that Secs. 633a(a) and (b) "are patterned after Secs. 717(a) and (b) of the Civil Rights Act of 1964, ... which extend the protection of Title VII to federal employees." Lehman v. Nakshian, 453 U.S. at 163-64, 101 S.Ct. at 2703. We have analogized the ADEA to Title VII in formulating burden-of-proof and order-of-proof standards for ADEA suits, see, e.g., Pena v. Brattleboro Retreat, 702 F.2d 322, 323 (2d Cir.1983), and other circuits have been guided by parallel provisions in Title VII in interpreting Sec. 633a, see, e.g., Ellis v. United States Postal Service, 784 F.2d 835, 838 (7th Cir.1986) (proper party defendant); Smith v. Office of Personnel Management, 778 F.2d 258, 262 (5th Cir.1985) (availability of compensatory damages), cert. denied, 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986).
 
 
 42
 Nonetheless, the evolution of Sec. 633a creates a strong inference that Congress deliberately chose not to make the ADEA limitations period for suits against the government the same as the 30-day period of limitation provided for analogous suits under Title VII, 42 U.S.C. Sec. 2000e-16(c). When Senator Bentsen first introduced his 1972 bill to extend the coverage of ADEA to government employers, see S. 3318, 92d Cong., 2d Sess., 118 Cong.Rec. 7745 (1972), the bill did not propose a new section for claims against government employers; it simply proposed to expand the definition of employer, which would have made existing provisions of the Act applicable to claims against the government. Id. at 7746. The bill was later restructured by Senator Bentsen to remove the federal government from the general definition of employer and to place appropriate substantive provisions in a separate section similar to Sec. 633a. Id. at 15894-95. This proposed new section, submitted as an amendment to S. 1861, provided that a civil action following a final agency decision on an age-discrimination claim would have to be filed within 30 days of that decision. Id. at 15895. This provision was thus virtually identical to the 30-day filing provision that appears in Title VII.
 
 
 43
 S. 1861 was then referred to committee. When it was reported out, it contained an ADEA amendment substantially similar to Senator Bentsen's proposal but for one element: the 30-day limitations period had been deleted. See id. at 23952, 23955-56. The ADEA amendment thus reported out of committee was essentially what now appears as part of Sec. 633a. The committee report that accompanied S. 1861, though noting that the ADEA "amendment is similar to a proposal first introduced by Senator Bentsen," S.Rep. No. 842, 92d Cong., 2d Sess. 45 (1972), was silent as to the reason for the elimination of the limitations period.
 
 
 44
 Congress's deletion of a provision virtually identical to the one we would otherwise think the most appropriate to borrow cannot be lightly disregarded. Cf. Lorillard v. Pons, 434 U.S. 575, 584-85, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978) (where Congress has rejected Title VII procedures in structuring the ADEA, reliance on Title VII for inference as to right of jury trial is misplaced, and interpretation of Title VII standards "sheds no light on congressional intent under the ADEA"). We think the history strongly suggests that a 30-day limitation on age-discrimination claims against the government was not what Congress intended.
 
 
 45
 In sum, though it is entirely possible that Congress would have thought it desirable to have age-discrimination claims against the government resolved expeditiously, the evolution of Sec. 633a and the presence of Sec. 633a(f) indicate that Congress intended that such claims not be governed by the relatively short statutes of limitations of either 29 U.S.C. Sec. 626(e) or Title VII. No other appropriate borrowing sources have been suggested to us, and we confess that we are unable to determine precisely what Congress had in mind.
 
 
 46
 The regulatory scheme developed by the EEOC, the agency having principal responsibility for enforcing the federal antidiscrimination laws, is consistent with an inference that Congress did not intend the 30-day limitations period applicable to Title VII claims to be applied to claims of age discrimination. First, there is no regulation stating that a 30-day period does govern age-discrimination claims; second, the regulation stating that a Title VII claimant's suit must be brought within a 30-day period, i.e., 29 C.F.R. Sec. 1613.281, is made expressly inapplicable to age-discrimination claims. Thus, 29 C.F.R. Sec. 1613.514 (1988) states that "[s]ection[ ] 1613.281 ... shall not apply to the processing of discrimination complaints on account of age."
 
 
 47
 Consistent with this explicit exclusion of age-discrimination complaints from the 30-day period recognized for other types of discrimination complaints, EEOC's notices to claimants, at least insofar as the record in this case shows, nowhere state that the time limitation on filing a civil action for age discrimination is 30 days after agency decision. Rather, as revealed by the notice received by Bornholdt, the instructions given to a claimant with the decision of his claim include the following language:
 
 
 48
 If you are dissatisfied with this decision, ... you may file a civil action in an appropriate U.S. District Court. If yours is a complaint of discrimination because of race, color, sex, religion, or national origin, you must file a civil action with the U.S. District Court within 30 calendar days of the date of your receipt of this letter.... If yours is a complaint of age discrimination, the aforementioned 30-day limit may not apply.
 
 
 49
 (Exhibit B to 1988 Aff., EEOC document entitled "Complainant's Right of Appeal" (emphasis added).)
 
 
 50
 Further, upon the filing of a claim with the EEOC or an agency EEO, a claimant apparently receives a document which is no more definitive with respect to the maximum interval between final agency decision and filing of court action, and which states that there is a six-year limitations period. Thus, Bornholdt received an EEOC form document which bore the headings
 
 FACT SHEET
 FILING A DISCRIMINATION COMPLAINT
 If You Are
 Federal Government Employee
 
 51
 and concluded with the following footnote:
 
 
 52
 In age discrimination cases, you may file an administrative complaint and then file a civil action, or you may choose not to file an administrative complaint and file a civil action, provided that you notify EEOC, in writing, within 180 calendar days of occurrence of the discriminatory act of your intent to file suit and, thereafter, wait 30 calendar days. Regardless of whether you file an administrative complaint or, alternatively, a Notice of Intent to Sue, any civil action must be filed within six years of occurrence of the discriminatory act.
 
 
 53
 (Emphasis added.) In short, nowhere in the regulations or in the notices given to claimants have we seen any agency interpretation that a claim of age discrimination against the government is limited by a 30-day period.
 
 
 54
 Although we are aware that one circuit court has held that ADEA claims against the government must be brought within 30 days after a final agency decision, see Rivera v. United States Postal Service, 830 F.2d 1037 (9th Cir.1987), the history of the Act, the regulatory framework, and the absence of analysis in Rivera persuade us that we should not strain here to join in that result.
 
 
 55
 Further, within this historical and regulatory framework, if we were to conclude that we should borrow a 30-day or other period shorter than six years to govern ADEA actions against the government, we would not view the borrowed statute as a limitation that affects the court's jurisdiction. Where Congress has waived the government's sovereign immunity from suit, we are of course required to observe the temporal limitations " 'defined by Congress for charging the public treasury.' " Schweiker v. Hansen, 450 U.S. 785, 788, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (per curiam) (quoting Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)) (emphasis ours); see Long Island Radio Co. v. NLRB, 841 F.2d 474, 477 (2d Cir.1988). But where the limitations period is borrowed in circumstances that do not reveal Congress's intent, we would not equate that judicial borrowing with a congressional limitation on the waiver of sovereign immunity. Thus, if we were to rule here that the statute of limitations is shorter than the time within which Bornholdt filed his suit, that limitation would not be jurisdictional, and we would be required to proceed to the questions of whether that limitations period should be extended in the present circumstances by reason of equitable estoppel or equitable tolling. See Cerbone v. International Ladies' Garment Workers' Union, 768 F.2d 45, 48-50 (2d Cir.1985). Since there is another basis on which we believe Bornholdt's suit should be allowed to proceed, however, we prefer to rely on that basis rather than either attempting to explore whether there may be here an estoppel against the government, a thorny question, see generally Schweiker v. Hansen, 450 U.S. 785, 101 S.Ct. 1468; Long Island Radio Co. v. NLRB, 841 F.2d at 478, or remanding to the district court, in this already protracted controversy, for factual determinations relevant to the claim of equitable tolling.
 
 
 56
 Accordingly, we decline to determine precisely what statute of limitations applies to Bornholdt's age-discrimination claim, and we turn to Bornholdt's contention that his present complaint should be deemed to relate back to his 1983 lawsuit.
 
 
 57
 2. The Relation Back of the Age-Discrimination Claim
 
 
 58
 The government argues that the present action should not be deemed to relate back to Bornholdt I for two principal reasons: (1) Bornholdt did not make this argument in the district court and hence it has not been preserved for appeal, and (2) relation back will not help Bornholdt because the complaint in Bornholdt I was premature. We reject both arguments.
 
 
 59
 As to the Government's contention that Bornholdt has waived the relation-back argument by not presenting it to the district court, the record is not clear. Although Bornholdt's papers in the district court did not expressly argue relation back, Bornholdt plainly brought to the district court's attention all of the facts pertinent to such an argument. He emphasized, inter alia, the virtual identity of the age-discrimination claims asserted in the two actions, the fact that the only reason for the dismissal of Bornholdt I was the lack of a final agency decision, and the fact that a final agency decision had by then been made unbeknownst to the court and Bornholdt. At oral argument of this appeal, Bornholdt's counsel stated that the relation-back argument was in fact made to the district court during a conference; counsel for the Government did not deny that this had occurred but stated only that she could not remember whether or not it occurred. Plainly none of the facts pertinent to the relation-back argument is in dispute; only legal questions are at issue. In all the circumstances, we exercise our discretion, see Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976), to entertain the relation-back argument on this appeal.
 
 
 60
 We find no merit in the Government's principal argument, i.e., that relation back would not save the present complaint because when Bornholdt I was commenced there had been no final agency action on Bornholdt's age-discrimination claim and hence Bornholdt I was premature. We would agree with the prematurity argument if that suit had been concluded before any final agency decision had been rendered; but we think the Government's argument ignores the actual circumstances surrounding the dismissal of Bornholdt I and takes a myopic view of the powers and responsibilities of the district court in light of Fed.R.Civ.P. 15(d).
 
 
 61
 Rule 15(d) provides, in pertinent part, that
 
 
 62
 [u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.
 
 
 63
 Fed.R.Civ.P. 15(d). An application for leave to file a supplemental pleading is addressed to the discretion of the court, and permission should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party. See, e.g., LaSalvia v. United Dairymen, 804 F.2d 1113, 1119 (9th Cir.1986), cert. denied, 107 S.Ct. 3212 (1987); C. Wright & A. Miller, Federal Practice and Procedure Sec. 1504, at 542-43 (1971). This procedure has been used in cases such as Purtill v. Harris, 658 F.2d at 138-39, in which the administrative agency had not rendered a final decision on the plaintiff's age-discrimination claims prior to the commencement of suit but did render a final decision on one such claim while the suit was pending. Thus, though the district court in Purtill dismissed the action on the ground that it was premature, and the court of appeals agreed that administrative remedies, once initiated, must be completed prior to commencement of a court action, the appellate court remanded the case in order to permit the plaintiff to file a modified complaint alleging that the agency had in fact rendered a final decision on one of his claims during the pendency of the suit.
 
 
 64
 We have no doubt that if Judge Gagliardi (who relied on Purtill in dismissing Bornholdt I for lack of a final agency decision) had been apprised in July 1984 that IRSEEO had theretofore rendered its final decision on the age-discrimination claim, he would immediately have permitted Bornholdt to file a supplemental complaint alleging the existence of that final decision. Such permission would surely have been granted in the interests of justice, and the filing of a supplemental complaint would have tolled the running of the limitations period from the date of the filing of that complaint.
 
 
 65
 Accordingly, we reject the Government's argument that the prematurity of the original complaint in Bornholdt I prevents relation back of the present lawsuit, for the pertinent time on which to focus is not the filing of that original complaint but rather the time at which a supplemental complaint could have been filed had the Government not kept silent about the existence of IRSEEO's final decision.
 
 
 66
 We see no equitable considerations favoring the Government that should prevent the present suit from relating back to the latter stages of Bornholdt I. In exploring this question, we are guided by the Supreme Court's analysis in Schiavone v. Fortune, 477 U.S. 21, 29-31, 106 S.Ct. 2379, 2384-85, 91 L.Ed.2d 18 (1986), of the analogous question of whether an amended complaint filed under Fed.R.Civ.P. 15(a), naming a new party, should be allowed to relate back to the date of the original complaint. As to such an amended complaint, Fed.R.Civ.P. 15(c) provides, in pertinent part, as follows:
 
 
 67
 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action ... that party (1) has received such notice of the ... action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
 
 
 68
 Fed.R.Civ.P. 15(c). The Schiavone Court, construing this language and noting that the linchpin of relation back is "notice within the limitations period," 477 U.S. at 31, 106 S.Ct. at 2385, set forth a four-part test for determining whether it is appropriate that a complaint relate back against a new party to the lawsuit:
 
 
 69
 (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.
 
 
 70
 Id. at 29, 106 S.Ct. at 2384.
 
 
 71
 The Schiavone-type test is plainly met here. First, it is undisputed that Bornholdt's present age-discrimination claim and the factual allegations underlying it were set forth in Bornholdt I. Second, the present defendants had actual notice of that claim; they were defendants in Bornholdt I. Third, given the assiduousness with which Bornholdt had theretofore been filing claims, the Government must surely have known that but for its own lack of disclosure, Bornholdt would promptly have alleged the existence of a final IRSEEO decision, thereby forestalling dismissal of his suit. And fourth, it is obvious that the notice and knowledge required by the second and third factors existed prior to the dismissal of Bornholdt I. We conclude, therefore, that it is appropriate for Bornholdt's present age-discrimination claim to relate back to the period of Bornholdt I that followed IRSEEO's final decision of that claim.
 
 
 72
 Finally, if no relation-back doctrine were available, we would, in the exercise of our equity powers, reopen Bornholdt I to permit Bornholdt to pursue his age-discrimination claim because of the Government's litigation posture in that case. Having based part of its motion to dismiss on the representation that there was no final IRSEEO decision on Bornholdt's age-discrimination claim, the Government should not have allowed the court to proceed on the basis of that representation once it was no longer true. There can be no suggestion that the Government did not know of the agency decision; IRSEEO was its own agency. In light of the fact that the Government kept silent as to the disappearance of this factual--and ultimately dispositive--basis for its motion, it is open to us, in the exercise of our equity powers, simply to reopen the judgment entered in Bornholdt I. Though perhaps Bornholdt could not have moved to vacate that judgment pursuant to Rule 60(b)--because the Rule requires that a motion based on fraud or mistake be made within one year of entry of judgment, and the Government did not inform Bornholdt of the IRSEEO final decision for more than a year after Bornholdt I was dismissed--no such time limit constrains the inherent power of the court to entertain a separate action to relieve a party from the judgment. See Fed.R.Civ.P. 60(b); see also id. (no time limit on motion based on "fraud upon the court"). In light of all the circumstances, were we not to rule that the present action is timely because it relates back to Bornholdt I, we would treat the present action as one seeking relief from that judgment and would set the judgment aside, thereby permitting Bornholdt to continue to pursue his claim of age discrimination with no question as to timeliness.
 
 
 73
 For the foregoing reasons, we conclude that the age-discrimination claim in the present complaint is not barred for failure to file within the appropriate period of limitations, whatever that period is.
 
 CONCLUSION
 
 74
 The judgment of the district court is affirmed insofar as it dismissed Bornholdt's claim of reprisal. Insofar as the judgment dismissed the claim of age discrimination, it is vacated, and the matter is remanded for further proceedings.