COMPUTER ASSOCIATES INTERNA-
TIONAL, INC., On–Line Software Inter-
national, Inc., and Pansophic Systems,
Inc., Plaintiffs,

v.

ELECTRONIC DATA SYSTEMS
CORPORATION, Defendant.

No. CV 93–0411.

United States District Court,
E.D. New York.

March 26, 1993.

Jonathan Miller, Dewey Ballantine, New York City, for plaintiffs.

G. Ira Greenberg, Edwards & Angell, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

On October 9, 1992, Computer Associates International ("CA") filed the complaint in this declaratory judgment action in Suffolk County Supreme Court. Defendant Electronic Data Systems Corporation ("EDS") removed the action to federal court on January 29, 1993. EDS now moves this court to dismiss, stay, or transfer the action based on the fact that a related action between the same parties has been pending in the Northern District of Texas for over a year and is scheduled for trial in November of 1993. For the reasons set forth below, this court hereby grants EDS's motion to dismiss.

### FACTS

EDS, a subsidiary of General Motors ("GM"), is in the "information technology business," which means that it provides computer-based systems and related data processing services to various commercial and governmental customers. Its principal services include developing, analyzing, installing,

operating and maintaining data processing systems for those customers. A corporation organized and existing under the laws of the state of Texas with its principal place of business in Dallas, Texas, EDS does business all over the world, including New York, and operates data centers in a variety of New York cities; in addition, EDS has authorized Prentice Hall Corp. Systems, 15 Columbus Circle, New York, New York, to be its registered agent within this state.

CA is a leading independent software development company and the dominant supplier of systems, applications, and graphics software for IBM and IBM-compatible mainframe computers. A corporation organized and existing under the laws of the state of Delaware with its principal place of business in Long Island, New York, CA is involved in developing, acquiring, marketing, and servicing over 200 computer software products primarily for use on mainframe and mini-computers.

On–Line Software International ("On–Line"), a wholly-owned subsidiary of CA since September 26, 1991, is a Delaware corporation originally headquartered in Fort Lee, New Jersey. Pansophic Systems, Inc. ("Pansophic"), a wholly-owned subsidiary of CA since October 31, 1991, is an Illinois corporation originally headquartered in Lisle, Illinois. Prior to acquisition by CA, both Pansophic and On–Line were independent designers, developers, and marketers of computer software that licensed the right to use certain of its computer software to third parties, including EDS. More specifically EDS and Pansophic entered into a Master Software License Agreement (the "Pansophic Agreement") in September of 1989, and EDS and On–Line entered into a similar Master Agreement (the "On–Line Agreement") in September of 1990. This lawsuit seeks a declaration of rights and obligations under these Agreements.

CA and EDS (and their subsidiaries) have been involved in various software license agreements from as early as October 1, 1983. On January 9, 1992, EDS filed an action against CA in the United States District Court for the Northern District of Texas alleging numerous state and federal claims, including breach of contract, interference with business relations, breach of the duty of good faith and fair dealing, antitrust violations and copyright misuse. (Affidavit of Ira G. Greenberg ¶ 2 and Exh. A) The heart of the Texas action is EDS's allegation that CA "has systematically acquired software companies ... with large market shares in software products that cannot be easily replaced [and,] [a]s a result, CA possesses powerful leverage over its customers (including EDS), which it applies by demanding excessive payments...." (Memorandum of Law in Support of Motion to Dismiss or Stay, at 3–4; Reply Memorandum at 4) EDS alleges that CA's deliberate pursuit and exploitation of its monopoly power has caused CA to breach numerous software license agreements.[1]

---

1. EDS's claims are put forth concisely in its Reply Memorandum as follows:

—Computer Associates acquires one of its competitor software companies (such as On–Line and Pansophic) with a large market share in software products that cannot be easily replaced and for which virtually no workable substitutes exist. (Between 1985 and 1992, Computer Associates acquired approximately 25 of its competitors.) Greenberg Aff., exh. A at ¶ 8, 69–73.

—As a result of this "lock-in," Computer Associates possesses powerful leverage over the customers (including EDS) of this newly-acquired vendor.

—Computer Associates then sets out to squeeze monopoly profits and other illegal revenue from its newly-acquired customer base. As EDS alleged in its original complaint, Computer Associates' methods include demanding excessive payments, intentionally disregarding and misinterpreting licenses, imposing new and more onerous restrictions on software use, interfering with customers' businesses, and refusing to sell or service products. *Id.* ¶¶ 5–7.

—Many of these customers, however, have contracts with Computer Associates' predecessor that are more favorable to the customer than what Computer Associates calls its "standard practices and procedures." It is undisputed that the Pansophic and On–Line agreements are two such contracts.

—As a matter of course, Computer Associates uses its power to force customers such as EDS off the existing, non-Computer Associates style contracts (such as the Pansophic and On–Line agreements) and to coerce them to do business the "Computer Associates way." For example, Computer Associates will refuse to license desperately needed products or services under the old contract, but offers them under Computer Associates' more onerous "standard terms."

On January 29, 1992, CA filed an 81–page answer to the Texas complaint alleging a variety of counterclaims, including breach of contract, copyright infringement, and tortious interference with business relations. (Greenberg Aff. ¶ 3 & Exh. B; Miller Aff. ¶ 29) With respect to these counterclaims, CA alleged:

> 120. In addition to the above [specifically mentioned] agreements, EDS is a party or successor-in-interest to numerous other agreements to which CA is a party or successor-in-interest.

> 121. Upon information and belief, EDS has breached most, if not all of those agreements. . . .

(Greenberg Aff. Exh. B) In other words, CA acknowledged the Texas action's expansive scope and revealed its understanding that all the agreements between the parties were likely to be the action's subject. Nevertheless, neither the complaint nor the answer expressly raised the issue of enforceability of the Pansophic or On–Line Agreements. While the original complaint discussed license agreements with numerous subsidiaries of CA, it did not mention Pansophic or On–Line specifically; it did refer to CA's "illegal acquisition" of Pansophic. Of course, reference to the dates of acquisition of On–Line and Pansophic reveals that at the time EDS filed its complaint, CA had owned these companies for only a few months.[2]

On October 6, 1992, EDS moved for leave to file a supplemental complaint in the Texas action and attached the proposed First Supplemental Complaint to its motion. (Greenberg Aff. ¶ 5 & Exh. E; Miller Aff. ¶ 32) Texas has a local rule mandating a twenty-day response period to such a motion. The District Court for the Northern District of Texas granted EDS's motion on October 27, 1992, and EDS filed its First Supplemental Complaint on October 28, 1992. (Greenberg Aff. ¶ 5 & Exhs. F & G) That complaint sets forth transactions that allegedly have occurred since EDS filed its original complaint, including violations of the On–Line and Pansophic Agreements. CA moved to dismiss the First Supplemental Complaint on November 17, 1992, and the Texas court has not yet decided that motion. EDS filed a Second Supplemental Complaint on November 25, 1992, in which it asserted claims against CA for breach of various subcontracts CA had entered into in connection with an EDS government contract with the Department of the Navy.

As mentioned above, CA filed the action now before this court on October 9, 1992. Notably, this action, which seeks a declaratory judgment construing the On–Line and Pansophic Master Software License Agreements, was filed against EDS and GM in Suffolk County Supreme Court three days after EDS moved to supplement its complaint in the Texas federal court.[3] In its New York complaint, CA explains the relationship between the two actions as follows:

> 23. Earlier this year, EDS filed an antitrust suit against CA in the United States District Court for the Northern District of Texas (the "Texas Action"). In the suit, CA has also asserted counterclaims against EDS.

> 24. Although the Texas Action involves a number of claims and counterclaims, including claims arising from alleged breaches of various contracts, alleged infringement and misuse of copyrights, alleged tortious interference with contracts and alleged antitrust law violations, the going forward rights and obligations of the parties to the On–Line Master Agreement and

---

**2.** Acquisition was in the Fall of 1991; the lawsuit was filed in January 1992.

**3.** CA explains the events leading up to its filing as follows: In September and October of 1992, counsel for CA and EDS were involved in discussions concerning the enforceability and scope of the On–Line and Pansophic Agreements. EDS contended that although it had no obligation to order any licensed software products under the Agreements, CA had a perpetual obligation to provide EDS with On–Line and Pansophic software products—as EDS ordered these products—in accordance with the terms and conditions of the On–Line and Pansophic Agreements. CA undertook to review the parties' rights and obligations under the agreements, and when EDS attempted to place orders, CA responded by saying the Agreements were under review. (The Agreements provide for negotiations prior to commencing an action.) Angry letters were exchanged and this lawsuit ensued. (Miller Aff. ¶¶ 9–23 & Exhs.)

848

the Pansophic Master Agreement are not made the subject of any allegations in either the Original Complaint or the Counterclaim in the Texas Action.

25. While two of the parties to this action, CA and EDS, are currently involved in the Texas Action, which is styled Electronic Data Systems Corporation, as Plaintiff and Counterclaim–Defendant, vs. Computer Associates International, Inc., as Defendant and Counterclaim–Plaintiff, Civil Action No. 3:92–CV–0055–X, *neither On–Line, Pansophic nor GM is a party to the Texas Action.*

26. On or about October 6, 1992, CA was served by telecopier with a motion by EDS for leave to file a supplemental complaint in the Texas Action, seeking to add new claims and to obtain new relief against CA regarding the On–Line Master Agreement and the Pansophic Master Agreement. *In essence, EDS is seeking to obtain the Texas court's permission to start a new action within the Texas Action. Pursuant to the Federal Rules of Civil Procedure, such a motion is not granted as a matter of right. CA has 20 days from the date the motion was filed to respond. CA intends to oppose EDS's motion in the Texas action.*

(Emphasis added) Clearly, CA downplayed the similarity between issues raised by the New York and Texas actions, especially in light of the proposed supplemental complaint. CA thereafter—on October 26th—opposed EDS's motion for leave to supplement its Texas complaint on the ground that the New York case was a prior pending action. The Texas court rejected that argument, granting the motion on October 27th, as already mentioned. On January 28, 1993, CA voluntarily discontinued the New York action as against GM, thereby creating diversity jurisdiction; EDS removed the New York action to this court on the very same day.

Notably, CA once before attempted to file a related action in a New York court. On January 29, 1992, CA filed an action in the Supreme Court of Nassau County against GM (and not EDS) alleging breach of contract and breach of the duty of good faith and fair dealing. (Greenberg Aff. ¶ 7 & Exh. I) Nassau Supreme Court Justice George A. Murphy dismissed that action on May 6, 1992, stating:

[T]his isn't a question of getting a simple little New York judgment on the term of the simple little contract.... There can be no doubt that this Court has an obligation not to literally take a piece of a quilt and treat of it separately. This is a quilt that you have designed.... I can only conclude that this is a situation where I must even go beyond the remedy of a stay because of what I've heard.

I conclude that the New York action is and must be dismissed because of the basic nature of the matter. Forum non conveniens, as far as I'm concerned, is hard to apply here because this is so expansive and everybody is all over this state and that state. But that's all the more reason why [the action] should stay in place in toto. The identity of the parties, it's hard for me to believe that we don't have that identification of the parties here, agent and principal, and the subject matter, albeit there has been a very eloquent attempt by counsel to distinguish and separate a portion of it from the whole, it's hard to accept that, because the way I've read the papers, no matter who wants to say it's only limited to this, it's going to be dragged into that, that whole of that, and because of those factors, it seems to me the Court indeed has had to make this decision, and the decision indeed is the dismissal of the action Computer Associates against General Motors, Supreme Court, New York State, County of Nassau, and you're to settle the order on notice. This matter is concluded.

EDS contends that CA has filed both the New York actions as tactical maneuvers.[4]

---

4. For support, EDS attaches excerpts from the deposition of CA through Douglas E. Robinson, its designated representative, discussing whether CA contends that an unspecified agreement is (it appears to be either the Pansophic or On–Line Agreement but it is not clear which) is unen-

forceable. According to EDS, this testimony, which occurred on October 27, 1992—after commencement of the New York action and on the same day that permission to file a supplemental complaint was granted—"illustrates just how much a tactical maneuver CA's filing it was."

The parties in the Texas action have exchanged in massive discovery to date. Hundreds of thousands of pages of documents have been produced, and many depositions have been taken or scheduled. Of course, both parties acknowledge that numerous depositions remain to be taken and documents to be exchanged. Discovery is scheduled to be completed by September 24, 1993, and the Texas case is scheduled to go to trial on November 1, 1993. The discovery has included the Pansophic and On–Line disputes. (See, e.g., Greenberg Aff. Exhs. C & D) For example, in its Second Document Production Request filed in April of 1992, CA requests the following:

7. All Documents relating to any license or contract between EDS and any Company acquired by CA, including any document relating to the use by EDS, or by any customer of EDS of any Product of any such Company.

12. All Documents relating to the acquisition by CA of Pansophic Systems.

13. To the extent not produced pursuant to request No. 12, all Documents relating to Pansophic Systems, including any Document relating to the use of any Pansophic Systems Product by EDS or its customers.

14. All Documents relating to any product market in which Pansophic Systems has been a competitor at any time.

(Greenberg Aff. Exh. C) Clearly, these requests relate to EDS's antitrust allegations, but they also concern the contractual relationship between EDS and Pansophic. Finally, at oral argument, EDS represented that if it were required to file an answer in this action, it would assert as compulsory counterclaims many of the claims stated affirmatively in the First Supplemental Complaint.

## DISCUSSION

The question now presented to this court is whether the New York action seeking a declaration of the rights of EDS and CA under the Pansophic and On–Line Agreements should be dismissed in light of the Texas-based comprehensive lawsuit between the parties. In favor of its motion for dismissal, EDS argues that the Texas litigation encompasses the contracts at issue in this lawsuit: EDS's antitrust claims involve Pansophic and On–Line products so that CA's actions under the Agreements will be before the Texas court; additionally, CA's assertions are defenses or compulsory counterclaims in the Texas action. EDS also argues that the Texas action was commenced first: because supplemental complaints generally relate back to original filing dates; because even if this court refuses to find relation back, the Texas proceedings have progressed further; and because technical adherence to chronological priority should not weigh heavily, especially since the New York action is vexatious. If this court refuses to dismiss the New York action, EDS requests that the action be stayed or transferred so as to prevent duplicative litigation and waste of judicial resources.

CA makes the following arguments in opposition to dismissal or stay: first, that the New York action was commenced prior to the filing of the First Supplemental Complaint in Texas; second, that the New York action seeks only to resolve the "single and simple issue" of enforceability of the Agreements, and is therefore unrelated to the Texas action; third, that the First Supplemental Complaint is the subject of a pending motion to dismiss; and fourth, that a dismissal or stay will result in incomplete relief since On–Line and Pansophic are not parties to the Texas action. In opposition to the motion to transfer venue, CA argues that New York is a more convenient forum for all the New York plaintiffs since they, their principle officers, and their lawyers are here; all parties do business here; and all relevant CA witnesses are available to testify in this District.

Rule 15(d), which authorizes the filing of supplemental complaints, provides in part:

EDS fleshes out this argument at pages 10–11 of its brief; essentially, EDS contends that even after CA brought the New York action seeking a declaration that the Pansophic and On–Line Agreements were unenforceable, CA did not honestly hold this belief. (Greenberg Aff. Exh. K) CA responds by asserting that its lawyers were investigating this Agreement and had not yet reached a conclusion as to its validity or scope.

Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

EDS filed a motion to supplement its complaint on October 6, 1992. CA filed this action on October 9, 1992. CA opposed EDS's motion to supplement on October 26, 1992 primarily on the basis of this action's pendency. The Texas court nevertheless granted the motion to supplement on October 27, 1992. CA thereafter filed a motion to dismiss the Texas First Supplemental Complaint, also premised in substantial part on this action's pendency; that motion is still under consideration.

■ As an initial matter, supplemental pleadings generally are deemed to relate back to the date of the original pleading if the original complaint put defendants on notice of the continuing nature of the violation alleged. Rejecting a statute of limitations defense based on the relation-back theory of supplemental complaints, the Third Circuit stated as follows:

Where, as here, the original pleading placed the defendant on notice that the disputed conduct was of a continuing nature, the defendant is generally expected to defend against all claims arising out of that course of conduct—whether accruing before or after the original pleading was filed.

*Chesapeake and O.R. Co. v. United States Steel Corp.,* 878 F.2d 686, 690 (3d Cir.1989) (*citing* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1508, at 556 (1971)); *see also William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 668 F.2d 1014, 1057 (9th Cir.1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 58, 74 L.Ed.2d 61 (1982) ("The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed ... Where ... the original pleading gave notice that the alleged wrongful conduct was of a continuing nature, supplemental pleadings addressed to

the same conduct should not encounter statute of limitations questions."). Despite CA's representations to the contrary, the original complaint in the Texas action certainly indicates the action's comprehensive nature and its concern with CA's acquisition of various software companies. It is not surprising that the On-Line and Pansophic Agreements were not specifically mentioned in the original complaint as CA had just recently acquired those companies.

■ However, even if this court were to find that the original pleading did not give adequate notice to defendants of the continuing nature of this action, this court still would reject CA's argument that the New York action came first. First, CA knew the nature and content of EDS's amended complaint prior to filing the New York action. Second and related, CA raised the pendency of the New York action in opposition to EDS's motion to supplement. The Texas court rejected that argument and is currently considering similar claims put forth in CA's motion to dismiss; this court should avoid undermining the judgments of its sister court. Third, "priority [of filing] should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 21, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983). While discovery in the Texas action is still progressing, there is no question that the parties already have come some way in that process.

CA cites several cases for the proposition that this circuit follows the "first-to-file" rule and therefore the New York action should be deemed commenced first. However, one look at those cases indicates that the first-to-file rule "embodies considerations of judicial administration and conservation of resources." *First City Nat. Bank and Trust Co. v. Simmons,* 878 F.2d 76, 80 (2d Cir. 1989). Rather than calling for rigid application, this rule requires "equitable balancing"—a court must evaluate factors such as "avoiding duplicative litigations" and "conserving judicial resources." *First City Nat. Bank,* 878 F.2d at 79–80 (dismissing New York action based on existence of previously

filed action in Oklahoma); *see also Motion Picture Laboratory Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir.1986) ("[w]here there are two competing lawsuits, the first should have priority, *absent the showing of balance of convenience ... or ... special circumstances giving priority to the second.*") (emphasis added).

Of course, none of the above matters if, as CA argues, the two actions between the parties are indeed distinct. However, the evidence belies this assertion. CA claims that this declaratory judgment merely involves interpreting the text of two agreements and thereby deciphering the parties' future obligations. EDS responds that the issues posed by the complaint before this court are defenses to claims already before the Texas court. This court agrees. EDS's original Texas complaint sets forth antitrust claims that include claims for divestiture of Pansophic and monopolization and attempted monopolization involving Pansophic and On-Line products. The Agreements at issue in this case govern the licensing and use of those products. CA's efforts to escape from or change the terms of those Agreements lie at the core of EDS's antitrust claims: in September and October of 1991 respectively, CA acquired On-Line and Pansophic; in January of 1992, EDS accused CA of monopolizing the software market; by the Summer of 1992, CA refused to provide products or services to EDS under the On-Line and Pansophic Agreements unless EDS met more onerous terms. (*See* footnote 1) It will be impossible for the Texas court to decide the issues in Texas without addressing the enforceability of the contracts at issue in this case; similarly, it would be impossible for this court to evaluate the enforceability of the Agreements without considering issues now before the Texas court.

CA attempts to argue that the New York action differs from the Texas action because it seeks only prospective relief—a declaration of rights and obligations—as opposed to the retrospective relief—damages—demanded in the Texas action. However, a judgment in Texas favorable to either party will necessarily affect any future rights under these contracts. Furthermore, the Texas Supplemental Complaint also seeks declaratory and equitable relief. While it is easy to understand CA's desire to have the parties' future business relationship resolved expeditiously and its concern that the complicated Texas action will take some time to complete, this court cannot understand how CA can characterize the New York action as a simple little contract dispute to be resolved "[b]y quickly declaring the nature and extent of the parties' obligations." (CA's Memorandum of Law at 12–13)

CA also argues that the Texas action will result in incomplete relief because On-Line and Pansophic are not parties to that action. However, they are in privity with their parent and would therefore be bound by any judgment rendered in Texas. *ALB, Inc. v. Noma Lites, Inc.*, 231 F.2d 662, 664 (2d Cir.1956). Moreover, deposition testimony shows that On-Line and Pansophic have not been functioning entities since CA acquired them. (*See* Exhibit L appended to the Reply Affidavit of Robert Elkin which contains deposition testimony showing that neither entity has active employees, products to license, or products to service as CA has taken over all such activities.)

**CONCLUSION**

In sum, the balance of factors in this case clearly weighs against duplicating the already extensive litigation now pending in Texas.[5] Plaintiffs have offered no compelling reason for allowing this action to proceed and defendant has shown all the reason in the world for finding that the same issues are currently before a sister court in this system. Accordingly, for the reasons discussed above, defendant EDS's motion to dismiss is hereby granted.

**SO ORDERED.**

---

5. There is no need to consider a transfer of venue since the same issues are now before the Texas court through the First Supplemental Complaint.