**Oliver R. GRACE, Lorraine Grace, Morgan H. Grace and Gerald I. White, Trustees of the John E. Grace Trust, individually, and as stockholders of Briggs Leasing Corporation suing on behalf of themselves and for the benefit of said corporation and for the class of all other stockholders of said corporation similarly situated, Plaintiffs,**

v.

**Robert ROSENSTOCK, Robert Genser, Edward Rosenstock, Briggs Leasing Corporation and Briggs Acquisition Corporation, Defendants.**

No. 85–CV–2039 (DGT).

United States District Court,
E.D. New York.

Sept. 30, 1996.

Herbert Rubin, Herzfeld & Rubin, New York City, for defendant Genser.

Robert Fryd, Warshaw Burnstein Cohen Schlesinger & Kuh, New York City, for proposed defendant Bank Leumi.

Roy B. Oser, Wohl & Entwistle, New York City, for proposed defendants David Mack, Leo V. Berger & Apex Marine Corp.

David K. Bergman, Siller Wilk, LLP, New York City, for proposed defendant Gary Holman.

## MEMORANDUM AND ORDER

LEVY, United States Magistrate Judge:

Plaintiffs move pursuant to Rule 25 of the Federal Rules of Civil Procedure for substitution of executors for two deceased named plaintiffs. Plaintiffs also move pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to supplement and further amend their amended complaint. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

## BACKGROUND AND FACTS

Plaintiffs, minority shareholders of defendant Briggs Leasing Corporation ("Briggs Leasing"),[1] commenced this action individually, as a class, and derivatively to rescind and reform a freeze-out merger, under federal and state law, and for money damages and other appropriate relief. Plaintiffs' amended complaint, filed on July 1, 1985,[2] alleges that the freeze-out merger violated Section 10(b) of the Securities Exchange Act of 1934, Rule 10b–5 promulgated thereunder, N.Y.Bus. Corp. Law § 605(a), and the exception stated in Section 623, subd. (K) of the N.Y.Bus. Corp.Law. Plaintiffs also seek damages for breach of fiduciary obligation under New York state law.

By order dated August 14, 1986, the Honorable Mark A. Costantino, United States District Judge, granted plaintiffs' motion to certify this action as a class action, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure. By order dated March 17, 1994, the Honorable Sterling Johnson, Jr., United States District Judge, entered a default judgment on the issue of liability against defendants Briggs Leasing Corporation and Briggs Acquisition Corporation. Judge Johnson further ordered that plaintiffs be permitted to conduct further discovery as necessary and directed that an inquest on damages be held.

The primary transaction alleged in the amended complaint is the alleged freeze-out merger, on or about February 26, 1985, of the minority shareholders of Briggs Leasing. Plaintiffs allege that the self-interested defendants effectuated the freeze-out merger through the use of a materially false proxy statement, thereby freezing-out the minority shareholders at the allegedly inadequate price of $1.50 per share. The amended complaint seeks, *inter alia*, the rescission of the merger and the restoration of the minority shareholders to their status as full shareholders of Briggs Leasing. The amended com-

---

1. The named plaintiffs were the beneficial owners of 7,476 common shares of Briggs Leasing, or approximately 1.25 percent of the outstanding common stock. *See* proposed Supplemental and Second Amended Complaint at ¶ 15. Briggs Leasing was a public corporation engaged in the business of leasing automobiles. As of September 25, 1985, it had approximately 190 shareholders. *Id.* at ¶ 16.

2. Plaintiffs originally commenced this action by a complaint dated June 3, 1985.

plaint also contains a derivative claim on behalf of the corporation, which alleges that the individual defendants enriched themselves at the expense of Briggs Leasing and misappropriated Briggs Leasing's corporate opportunities; for the derivative claim, plaintiffs seek damages that would be payable to the corporation.[3]

By their proposed Supplemental and Second Amended Complaint, dated January 16, 1996, plaintiffs seek to add numerous allegations against defendants Robert Rosenstock and Richard Genser, and to add as defendants Bank Leumi Trust Company of New York ("Bank Leumi"), David Mack, Leo Berger, Apex Marine Corporation ("Apex Marine"), and attorney Gary Holman.

In essence, the proposed Supplemental and Second Amended Complaint charges that, subsequent to the events alleged in the amended complaint, majority stockholder and director Robert Rosenstock and director Robert Genser[4] caused Briggs Leasing to mortgage all of its real estate at 777 Northern Blvd. in Great Neck, New York and to incur loan obligations to proposed defendants Bank Leumi, David Mack, Leo Berger, and Apex Marine. Plaintiffs contend that the proceeds of the mortgages and other loan obligations went to Robert Rosenstock personally or to other businesses owned by Rosenstock and others, including Genser, and that Briggs Leasing received only a fraction of the proceeds of those loans. The proposed Supplemental and Second Amended Complaint alleges that these conveyances were made without any consideration, or without fair consideration to Briggs Leasing, and that they were transfers in fraud of creditors under New York's Debtor–Creditor Law sections 273–a, 273, 274 and 276. Accordingly, the proposed Supplemental and Second Amended Complaint alleges that defendants Rosenstock and Genser were unjustly enriched and breached their fiduciary duties to

the corporation and to the minority shareholders.

With regard to Bank Leumi, David Mack, Leo Berger and Apex Marine, the proposed Supplemental and Second Amended Complaint charges that those proposed defendants engaged in the above transactions knowing that they constituted fraudulent conveyances. Plaintiffs further accuse Gary Holman, Esq., the attorney for Briggs Leasing who allegedly supervised the above-described transactions, of breaching his fiduciary duty to Briggs Leasing and to plaintiffs.

Named plaintiffs Oliver R. Grace and Morgan H. Grace have died since the filing of the amended complaint. Accordingly, plaintiffs seek to substitute the executors of their estates pursuant to Fed.R.Civ.P. 25. In addition, defendant Edward Rosenstock, who was Chairman of the Board, Chief Executive Officer and President of Briggs Leasing at the time of the alleged freeze-out merger, died in 1987.

## I. *New Allegations Against Defendants Rosenstock and Genser*

The proposed Supplemental and Second Amended Complaint alleges that after the alleged freeze-out merger took place in September of 1985, Briggs Leasing executed a number of notes and, in return, gave Bank Leumi mortgages on its property at 777 Northern Blvd. Specifically, plaintiffs allege that:

(1) on November 22, 1986, Briggs Leasing issued a note to Bank Leumi in the amount of $270,000, of which:

   (a) $201,683.33 went to Robert Rosenstock personally by Bank Leumi issuing a check for that amount to Leo Berger in order for Rosenstock to purchase Berger's fifty percent interest in 124 S. Middle Neck Road Associates; and

---

3. Specifically, the amended complaint alleges that the proxy statement was materially misleading in that it failed to disclose the improper diversion of corporate opportunities by the individually named defendants, including their acquisition of Ross Chevrolet Cadillac Oldsmobile, Inc. and Belgrave Oldsmobile, Inc.

4. Robert Rosenstock was a Vice President and director of Briggs Leasing and Robert Genser was a Vice President, director and Secretary–Treasurer of Briggs Leasing. Together, Robert Rosenstock, Edward Rosenstock and Robert Genser owned seventy-two percent of the outstanding shares of Briggs Leasing at the time of the alleged freeze-out merger.

(b) $68,316.67 went to Robert Rosenstock personally by Bank Leumi issuing a check for that amount to the New York State Tax Commission in connection with 124 S. Middle Neck Road; and

(2) on April 22, 1988, Briggs Leasing issued a note to Bank Leumi in the amount of $3,721,215.35, of which:

(a) Bank Leumi paid $743,175 to Leo Berger to pay off Robert Rosenstock's personal note, plus interest, in connection with Robert Rosenstock's purchase of Berger's fifty percent interest in 124 S. Middle Neck Road Associates; and

(b) $398,451.86 went to Belgrave Oldsmobile, Inc., a company owned by Rosenstock and Genser; and

(c) Bank Leumi paid $306,185.53 to Lane Holding Co. to pay off a mortgage on 732 Northern Blvd. in Great Neck that was an obligation of RER Motors, Inc., Rosenstock and Genser's Company; and

(d) $270,000 was used to pay Bank Leumi for its loan to Briggs Leasing on November 22, 1986, the proceeds of which allegedly were used for Robert Rosenstock's personal benefit; and

(3) on October 6, 1988, Briggs Leasing issued a note to Bank Leumi in the amount of $1,000,000, which went in its entirety to Briggs Ford, an agency that was going to be owned by Robert Rosenstock, his mother, Charlotte Rosenstock, his sister, Adrianne Rosenstock Halperin, and his brother-in-law, James Halperin.

The proposed Supplemental and Second Amended Complaint also alleges that Rosenstock and Genser caused Briggs Leasing to convey second, third, and fourth mortgages on its real estate at 777 Northern Boulevard and caused Briggs Leasing to execute notes to David Mack, Leo Berger, and Berger's company, Apex Marine, but that almost all of the proceeds from such loans went to Rosenstock personally or to businesses and properties owned by him individually or with others, including Genser. Specifically, the proposed Supplemental and Second Amended Complaint alleges that:

(1) on February 10, 1989, Briggs Leasing issued a $1,000,000 note to David Mack, of which:

(a) $900,000 went directly to GMAC, on behalf of Belgrave Oldsmobile Inc., which was allegedly owned by Rosenstock and Genser; and

(b) some part of the remaining $100,000 was used "for Rosenstock and Genser's personal benefit;" and

(2) on April 26, 1989, Briggs Leasing issued a $1,000,000 note to Leo Berger, of which $981,524 went into Robert Rosenstock's personal bank account at National Westminster Bank; and

(3) on June 27, 1989, Briggs Leasing issued a $1,000,000 note to Apex Marine and David Mack ($500,000 each), of which:

(a) $807,000 went into Robert Rosenstock's personal bank account at National Westminster Bank; and

(b) $175,000 was used to pay off a second mortgage and note on 51 Great Neck Road, which was owned by 51 Great Neck Road Associates, Rosenstock and Genser's partnership; and

(4) on August 18, 1989, Briggs Leasing issued a $500,000 note to Apex Marine and David Mack ($250,000 each), of which $493,500 went into Robert Rosenstock's personal bank account at National Westminster Bank. In addition, plaintiffs allege that Rosenstock and Genser caused Briggs Leasing to pay interest on the above loans, in part for the benefit of Rosenstock and Genser.

By reason of the foregoing transactions, plaintiffs seek to allege, *inter alia,* that: (1) Rosenstock and Genser breached their fiduciary duties to Briggs Leasing and plaintiffs by enriching themselves in the amount of at least $6,314,000 at the expense of Briggs Leasing; (2) the above conveyances were made without fair consideration and caused Briggs Leasing to incur obligations that rendered it insolvent, and thus were fraudulent as to Briggs Leasing and plaintiffs under New York's Debtor–Creditor Law §§ 273–a, 274, 276; and (3) Rosenstock and Genser committed a deliberate fraud on this court by attempting to make any judgment in plaintiffs' favor unenforceable.

The proposed Supplemental and Second Amended Complaint also alleges that, on January 16, 1990, Rosenstock and Genser caused Briggs Leasing to sell its real estate at 777 Northern Blvd for a price that was at least $1,150,000 below its fair market value. On the same date, according to plaintiffs, Rosenstock and Genser caused Briggs Leasing to pay $3,130,840.65 to Bank Leumi, $519,583 to David Mack and $502,083 to Apex Marine, in payment of the above-described notes. The proposed Supplemental and Second Amended Complaint seeks compensatory and punitive damages against Rosenstock and Genser and states that, to the extent that Briggs Leasing gave any guarantees to Bank Leumi, David Mack, Leo Berger or Apex Marine on loans by them to Robert Rosenstock personally, RER Motors, Inc., or 51 Great Neck Road Associates, those guarantees should be rendered void.

## II. Allegations Against Proposed Defendants Bank Leumi, Mack, Berger, and Apex Marine

With respect to Bank Leumi, the proposed Supplemental and Amended Complaint alleges that the notes, mortgages, guarantees and other conveyances by Briggs Leasing to Bank Leumi constituted fraudulent conveyances. Plaintiffs seek to allege that Bank Leumi had notice or knowledge of this litigation and knowledge that the loan proceeds from Bank Leumi under notes executed by Briggs Leasing did not go only to Briggs Leasing but also went to Robert Rosenstock personally or to businesses and properties owned by Robert Rosenstock and others, including Genser. In particular, the proposed Supplemental and Amended Complaint alleges that, by accepting first mortgages and obligations under notes from Briggs Leasing in the total amount of $721,215.35 on April 22, 1988 and October 6, 1988 in exchange for less than $1,907,000 paid to Briggs Leasing as loan proceeds, Bank Leumi knew that Briggs Leasing (1) would not be able to meet its debts as they matured, (2) would not have sufficient capital to continue to operate its business, (3) would be forced to borrow money almost immediately thereafter, (4) would be placed in such perilous financial status that it would be forced to sell

its 777 Northern Blvd. property under duress, and (5) would pay unearned interest and amortization on the face amount of its debt to Bank Leumi. Plaintiffs thus claim that Bank Leumi damaged Briggs Leasing in the total amount of $12,180,841, plus interest.

Moreover, in 1992, the Supreme Court of New York, County of Nassau, entered a judgment against Briggs Leasing and in favor of Bank Leumi in a mortgage foreclosure action. The proposed Supplemental and Second Amended Complaint alleges that, since Rosenstock and Genser had caused Briggs Leasing to make what plaintiffs allege are fraudulent conveyances, the company did not properly defend the foreclosure action and did not assert proper defenses as to the alleged fraudulent conveyances. For that reason, plaintiffs request that the court "set aside Bank Leumi's judgment obtained against Briggs."

With respect to Mack, Berger and Apex Marine, the proposed Supplemental and Second Amended Complaint alleges that said defendants accepted notes and mortgages from Briggs Leasing as security, despite their knowledge that almost all of the proceeds of the loans either went into Robert Rosenstock's personal bank account or for the benefit of businesses and properties owned by Rosenstock and Genser. In addition, plaintiffs seek to allege that Rosenstock and Genser caused Briggs Leasing to pay $519,583 to Mack and $502,803 to Apex Marine without receiving any fair consideration in exchange. Plaintiffs thus claim that Briggs Leasing was damaged: (1) by Mack in the total amount of $2,269,583, plus interest, (2) by Berger in the amount of $1,000,-000, plus interest, and (3) by Apex Marine in the amount of $1,252,803, plus interest.

## III. Allegations Against Proposed Defendant Gary Holman

Plaintiffs also seek to add Gary Holman, an attorney, as a defendant in this action. The proposed Supplemental and Second Amended Complaint alleges that Holman was the attorney for Briggs Leasing, the personal attorney for Robert Rosenstock and Robert Genser, and the attorney for the busi-

nesses and real estate owned by Rosenstock and Genser. Thus, the proposed Supplemental and Second Amended Complaint alleges that, because Gary Holman owed a fiduciary duty to each of his clients, he was in a conflict of interest between Briggs Leasing, on the one hand, and Rosenstock and Genser, on the other, and favored Rosenstock and Genser at the expense of and detriment to Briggs Leasing.

Further, the proposed Supplemental and Second Amended Complaint alleges that Gary Holman supervised all of the closings of loans and mortgages set forth above, and thus knew that in exchange for notes executed by Briggs Leasing in the face amount of $8,221,215, Briggs Leasing received less than $1,907,000, and the balance of $6,314,215 either went to Robert Rosenstock personally or to businesses or properties owned by Robert Rosenstock personally or with others, including Genser. Plaintiffs seek to allege that Gary Holman carried out instructions from Robert Rosenstock whereby Briggs Leasing made transfers without fair consideration that were fraudulent as to Briggs Leasing and plaintiffs and that, by reason of Gary Holman's breach of fiduciary duty to Briggs Leasing and plaintiffs, plaintiffs have suffered damages in the amount of $314,215.

The proposed Supplemental and Second Amended Complaint further alleges that Gary Holman accepted instructions from Robert Rosenstock to have Briggs Leasing use the proceeds of $4.65 million from its sale of 777 Northern Blvd. to make payment of $3,130,841 to Bank Leumi, $519,583 to David Mack and $502,083 to Apex Marine, when Gary Holman knew that the true debtors for those amounts were, in fact, Rosenstock and Genser and their companies and properties and that Briggs Leasing did not receive fair consideration in exchange for its transfer of notes and mortgages to Bank Leumi, Mack, Berger and Apex Marine. Again, plaintiffs seek to allege that Gary Holman was in a conflict of interest and, to the detriment of Briggs Leasing and plaintiffs, supervised the payment by Briggs Leasing of the debts of Rosenstock and Genser and their businesses and properties, thus causing Briggs Leasing and plaintiffs additional damages in the

amount of at least $4,152,507. The proposed Supplemental and Second Amended Complaint alleges that, by reason of Gary Holman's breach of his contractual obligation to represent Briggs Leasing with undivided loyalty and to act in good faith in rendering legal services to Briggs Leasing, Briggs Leasing has been damaged in the amount of $10,466,722.

## DISCUSSION

■ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." As plaintiffs point out, the courts have interpreted this provision liberally to allow plaintiffs to add new or alternative causes of action, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), and to add or substitute defendants. *Travelers Indem. Co. v. United States*, 382 F.2d 103, 106 (10th Cir.1967); *Villani v. New York Stock Exchange, Inc.*, 348 F.Supp. 1185, 1193 n. 9 (S.D.N.Y.1972). The same liberal interpretation generally applies to motions to supplement pleadings pursuant to Fed. R.Civ.P. 15(d). *Kahn v. General Motors Corp.*, 865 F.Supp. 210, 215 (S.D.N.Y.1994); *Music Deli & Groceries, Inc. v. Internal Revenue Service, Dist. of Manhattan*, 781 F.Supp. 992, 997 (S.D.N.Y.1991).

■ However, courts will not grant leave to amend where the movant has engaged in undue delay, where the amendment would cause undue prejudice to the opposing party, or where the amendment would be futile. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. *See also S.S. Silberblatt, Inc. v. East Harlem Pilot Block–Building 1 Housing Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir.1979) (leave to add a new cause of action will not be granted unless the movant has "colorable grounds for relief" under the new claim); *Katzman v. Sessions*, 156 F.R.D. 35, 38 (E.D.N.Y.1994) ("a proposed pleading will be considered futile if it fails to state a claim that could withstand a motion to dismiss") (citation omitted); *U.S. Metal & Coin Co. v. Burlock*, 652 F.Supp. 37, 39 (E.D.N.Y.1986) (a "trial court does not abuse its discretion in denying leave to amend a complaint which even as amended would fail to state a cause of ac-

tion"). In particular, in determining whether to permit amendment of the complaint, the court may consider whether the proposed amendment would be time-barred. *McGill v. Goff*, 17 F.3d 729, 734 (5th Cir.1994) (denying leave to amend to add new parties and claims where amendments were barred by statute of limitations and thus would be futile); *Prebble v. Hinson*, 825 F.Supp. 185, 186–88 (S.D.Ohio 1993) (denying motion to amend where state of limitations had run and requirements for relation back were not met).

Defendant Genser and proposed defendants Bank Leumi, Mack, Berger, Apex Marine and Holman oppose plaintiffs' motion to amend and supplement the amended complaint on a number of grounds. First, they point out that, with the exception of the allegations concerning the January 16, 1990 payments by Briggs Leasing to Bank Leumi, Mack and Apex Marine, all of the proposed new allegations are based on occurrences and transactions that allegedly took place more than six years ago, and thus are time-barred. The proposed new defendants further argue that, since the claims plaintiffs seek to plead against them are based exclusively on New York law, the court lacks supplemental jurisdiction over those claims or, in the alternative, that the court should decline to exercise supplemental jurisdiction over those claims. These arguments will be addressed in turn.

*Relation Back*

■ The defendants and proposed defendants argue that plaintiffs are barred by the applicable statute of limitations from asserting fraudulent conveyance claims in this case. It is undisputed that an action to set aside a fraudulent conveyance is governed by the six-year limitations period set forth in section 213(1) of New York's Civil Practice Law and Rules. *See Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir.1993). In addition, actions for breach of fiduciary duty, for legal malpractice and for breach of contract are subject to six-year statutes of limitations under New York law. *See Cohen v. Goodfriend*, 665 F.Supp. 152, 159–160 (E.D.N.Y.1987).

Plaintiffs argue that, although the statute of limitations may have expired with regard to most of the allegations they now seek to include in their pleadings, the otherwise time-barred claims relate back to the date of filing of the original complaint pursuant to Fed.R.Civ.P. 15(c). Under Rule 15(c), entitled "Relation Back of Amendments," an amendment of a pleading relates back to the original filing date when the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The purpose of Rule 15(c) is to provide the opportunity for a claim to be tried on its merits, rather than being dismissed on a procedural technicality. *Siegel v. Converters Transp., Inc.*, 714 F.2d 213, 216 (2d Cir.1983).

■ While courts regularly allow relation back of amendments to permit a plaintiff to correct a procedural deficiency or modify the facts alleged in the earlier pleading, courts do not permit the use of Rule 15(c) to add allegations concerning an entirely different transaction or set of facts. *See Forzley v. AVCO Corp. Electronics Division*, 826 F.2d 974, 981 (11th Cir.1987) ("'[A]n amendment which states an entirely new claim for relief based on different facts will not relate back'") (quoting 3 J. Moore, *Moore's Federal Practice* ¶ 15.15[3] at 15–147 to 149 (2d ed. 1985)). Thus, courts have applied the relation back doctrine to allow plaintiffs to correct factual details in the original complaint, to amplify the facts alleged, to cure a defective statement of jurisdiction or venue, to increase the amount claimed in the prayer for relief, to reassert a claim that was deficiently stated initially, or to change the legal theory on which the action was brought. *See, e.g., F.D.I.C. v. Conner*, 20 F.3d 1376, 1386 (5th Cir.1994) ("if a plaintiff seeks to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in the prior complaint, then relation back is allowed"); *Smith v. Town of Clarkton, North Carolina*, 682 F.2d 1055, 1060 (4th Cir.1982) (relation back provision applied to allow amendment to assert jurisdiction under Fair Housing Act); *Southern Colorado Prestress Co. v. Occupational Safety & Health Review Comm'n*, 586 F.2d 1342, 1347 (10th Cir.1978) (amendment of complaint to allege violation of different OSHA standard related back where facts and circumstances com-

plained of were identical); *Kelcey v. Tankers Co.*, 217 F.2d 541, 543 (2d Cir.1954) (amendment that corrected dates and location of alleged incident related back); *In re Chaus Securities Litigation*, 801 F.Supp. 1257, 1264 (S.D.N.Y.1992) (allegations that simply amplify facts alleged in original pleading, or set forth those facts with greater specificity, will relate back to original pleading).

However, courts have declined to apply the relation back doctrine to allow the addition of new claims for relief based on transactions or events not included in the original pleading. *See, e.g., Korody–Colyer Corp. v. General Motors Corp.*, 828 F.2d 1572, 1575 (Fed.Cir. 1987) ("Because [plaintiff's] amendment asserts an entirely new claim for relief based upon different facts it does not relate back"); *Hunt v. American Bank & Trust Co. of Baton Rouge*, 783 F.2d 1011, 1014 (11th Cir. 1986) (amendment to add allegations concerning fraudulent transactions separate from transaction alleged in original complaint did not relate back); *In re Kam Kuo Seafood Corp.*, 67 B.R. 304, 307 (Bankr.S.D.N.Y.1986) (amended complaint does not relate back to date of filing of original complaint where claims asserted therein are based on transactions separate from and in addition to those already pleaded); *Contemporary Mission, Inc. v. New York Times Co.*, 665 F.Supp. 248, 255–56 (S.D.N.Y.1987) (amendment will relate back if it makes more specific what has already been alleged, but will not relate back if it sets forth new set of operative facts), *aff'd*, 842 F.2d 612 (2d Cir.), *cert. denied sub nom., O'Reilly v. New York Times Co.*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988).

■ Also relevant to the Rule 15(c) analysis is whether the original complaint gave the opposing party adequate notice of the facts out of which the time-barred claim arises. *Korody–Colyer Corp.*, 828 F.2d at 1575; *In re Chaus Securities Litigation*, 801 F.Supp. at 1264; *106 Mile Transp. Assocs. v. Koch*, 656 F.Supp. 1474, 1487 (S.D.N.Y.1987). *See also* 6A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure:* Civil 2d § 1497, at 79 (the question is whether "the alteration of the original statement is so substantial that it cannot be said that defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the [new] claim or defense"). A failure of notice prevents relation back because permitting an amendment without notice of the facts out of which a time-barred claim arises would cause undue prejudice to the opposing party. *See Percy v. San Francisco Gen'l Hosp.*, 841 F.2d 975, 980 (9th Cir.1988) (proposed amendment did not provide adequate notice of new claims, and thus did not relate back, where it implicated an entirely new set of actors who were alleged to have injured plaintiff in a proceeding that took place subsequent to, and entirely independent of, events charged in original complaint); *In re Crazy Eddie Securities Litigation*, 747 F.Supp. 850, 855 (E.D.N.Y.1990) (amendment will relate back only if original pleading gives adversary all notice that statutes of limitations are intended to afford, namely, fair notice of general fact situation out of which claim arises).

■ In the instant case, plaintiffs' earlier complaint asserted acts allegedly violative of the federal securities laws, *i.e.*, a freeze-out merger and a materially misleading proxy statement. The proposed Supplemental and Second Amended Complaint seeks to assert an entirely different set of acts allegedly violative of a different set of laws. Specifically, as stated *supra*, plaintiffs now seek to allege numerous mortgage and loan transactions that took place subsequent to, and in some cases years after, the events alleged in the original complaint and to bring pendent state law claims against five new defendants. Clearly, then, the proposed Supplemental and Second Amended Complaint does not seek to state a new legal theory of relief or amplify the facts alleged in the prior complaint, but rather sets forth a completely new set of operational facts.

Moreover, even the most liberal reading of plaintiffs' amended complaint fails to provide the defendants or the proposed defendants with notice that, in addition to the circumstances surrounding the alleged freeze-out merger, they should have been prepared to defend claims related to the notes and mortgages that Briggs Leasing executed years

later. The latter events are entirely different and were not even suggested in the original pleading. This is especially true with regard to the proposed new defendants, who were not parties to the original complaint and are not alleged to have been involved with the alleged freeze-out merger or even to have known that it occurred. Accordingly, there is no basis for application of the relation back doctrine in this case.

In support of their argument, plaintiffs point to the general rule that claims accruing after the date of the original pleading will relate back if the original complaint put the defendants on notice of the "continuing nature of the violation alleged." *Computer Assocs. Int'l, Inc. v. Electronic Data Systems Corp.*, 816 F.Supp. 845, 850 (E.D.N.Y.1993). *See also Chesapeake and Ohio Railway Co. v. United States Steel Corp.*, 878 F.2d 686, 690 (3d Cir.1989) ("Where, as here, the original pleading placed the defendant on notice that the disputed conduct was of a continuing nature, the defendant is generally expected to defend against all claims arising out of that course of conduct—whether accruing before or after the original pleading was filed"). Plaintiffs argue that the alleged fraudulent conveyances were part of a continuing pattern on the part of Rosenstock and Genser to loot the corporation for their own gain and, accordingly, that the original complaint should have put defendants on notice that they may have to defend against such claims. As explained above, however, plaintiffs' initial complaint alleged, in essence, a specific act of wrongdoing, *i.e.*, a freeze-out merger, which is a distinct transaction from the subsequent note and mortgage transactions plaintiffs now seek to add. Therefore, plaintiffs' original pleading did not place the defendants or the proposed defendants on notice of any "continuing course of conduct."

■ Plaintiffs also contend that, while the note and mortgage transactions may be time-barred, the January 16, 1990 payments by Briggs Leasing to Bank Leumi, Mack and Apex Marine constitute transactions that fall within the six-year statute of limitations. This argument has a surface appeal, but ultimately is unpersuasive. The January 1990 loan payments cannot, by themselves, constitute fraudulent conveyances, since they are not events that are independent or separate from the original note and mortgage transactions.[5]

■ As stated above, leave to amend need not be granted where the amendment would be futile. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. Here, the amendments that plaintiffs seek to make cannot relate back under Rule 15(c) and thus are time-barred. Accordingly, the motion to amend and supplement must be denied, as it would be futile to add claims and parties against whom the statute of limitations has run.

### Equitable Tolling and Equitable Estoppel

Plaintiffs argue that, even if their proposed supplemental and amended allegations are time-barred and do not relate back to the date of filing of the original complaint under Rule 15(c), the court should exercise its discretion to extend the statute of limitations based on equitable tolling or equitable estoppel, or on the theory that the court may use its "inherent power" to prevent a "fraud on the court."

■ "Under the doctrine of equitable tolling, a complainant may be allowed to file

---

5. Even if the January 1990 payments could themselves be considered fraudulent conveyances, and thus to have been pleaded within the applicable statute of limitations, this court would nonetheless deny plaintiffs' motion to amend and supplement the pleadings to include allegations regarding those payments. At this late date in the proceedings granting plaintiffs' motion would cause substantial further delays and prejudice to the proposed new defendants, who would now be required to re-open all of the depositions that have taken place thus far in the litigation and to conduct full document discovery. As the proposed new defendants point out, such efforts would be impeded by the fact that certain witnesses, most notably Edward Rosenstock, have died, many of the relevant entities are no longer in business and many documents have been destroyed or are otherwise unavailable. *See Ansam Assocs. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985) ("Although generally leave to file an amended pleading 'shall be freely given,' . . . 'the trial court [is] required to take into account any prejudice' that might result to the party opposing the amendment") (quoting Fed.R.Civ.P. 15(a) and *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 802–03, 28 L.Ed.2d 77 (1971)).

his or her claim outside the applicable limitations period if, because of some action on the defendant's part, the complainant was unaware that the cause of action existed." *Long v. Frank,* 22 F.3d 54, 58 (2d Cir.1994), *cert. denied sub nom., Long v. Runyon,* —— U.S. ——, 115 S.Ct. 938, 130 L.Ed.2d 883 (1995). *See also Dillman v. Combustion Eng'g. Inc.,* 784 F.2d 57, 60 (2d Cir.1986). Thus, the doctrine of equitable tolling applies "where the facts show that the defendant engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of a cause of action." *Long,* 22 F.3d at 58 (quoting *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir.1985)). *See also Jerry Kubecka, Inc. v. Avellino,* 898 F.Supp. 963, 971 (E.D.N.Y. 1995) (the equitable tolling doctrine applies where the plaintiff "remains in ignorance of the vital information 'without any fault or want of diligence or care on his part' ") (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946)).

■ Plaintiffs contend that defendants Rosenstock and Genser intentionally concealed the notes and mortgages from them by failing to record the full amount of the mortgages on the company's books and financial statements. Instead of showing mortgages payable of $10.6 million, plaintiffs allege that Briggs Leasing's tax returns showed only $3.7 million in mortgages. Plaintiffs further claim that, although they knew of at least $3.7 million in mortgages as of June 30, 1990, they did not discover that the mortgages were without consideration, or without fair consideration, until they obtained discovery under third-party subpoenas *duces tecum* from the company's outside accountant, Joseph Gluckman,[6] and Bank Leumi, David Mack and Gary Holman in December 1995 and January 1996.

In addition, plaintiffs contend that in their submissions in opposition to plaintiffs' motion to compel discovery, Messrs. Mack and Berger never stated that they paid the amount of the mortgages to Robert Rosenstock personally or for the benefit of the Rosenstock–Genser entities. Plaintiffs further point out that David Mack obtained an extension of time on his deposition from June 29, 1995 to July 6, 1995. They claim that if Mr. Mack had produced his documents on the original deposition date, then the allegedly fraudulent mortgage of August 18, 1989 (for $500,000) would have been discovered within the six year statute of limitations period. Plaintiffs make the same argument with regard to Captain Berger; although Captain Berger's deposition was adjourned because of his ill health, plaintiffs maintain that he should have made a timely production of documents on June 29, 1995, which, they claim, would have led them to discover the August 18, 1989 fraudulent mortgage within the six-year limitations period.

Moreover, plaintiffs claim that they originally noticed the depositions of Rosenstock and Genser in 1989, but that they granted those defendants a series of adjournments from 1989 until 1993. *See* Transcript of Oral Argument, dated May 15, 1996, ("Tr.") at 5. Then, in March 1993, counsel for Rosenstock and Genser, Robert Rosen, Esq., filed a motion to withdraw from the case, which the Honorable David G. Trager, United States District Judge, granted in February 1995. Tr. at 7–8. Plaintiffs contend that they were unable to take discovery as that motion was pending, since Mr. Rosen was claiming a conflict of interest between his two clients; however, they did not contact the court in an effort to compel or stay discovery.[7]

This case is now over eleven years old. Although plaintiffs complain that the depositions of Rosenstock and Genser were adjourned repeatedly during the pendency of

---

**6.** At oral argument, plaintiffs' counsel stated that when he appeared at the offices of Briggs Leasing's accountants in 1992 to examine the company's financial records, the accountants refused access to the books and records. Nonetheless, plaintiffs did not seek court intervention to compel discovery. Tr. at 18–19.

**7.** In fact, in January 1989, Judge Costantino erroneously entered an order discontinuing this case when a companion case settled. The case remained off the docket for a four-year period, until plaintiffs discovered the mistake and moved to set aside the order of discontinuance and restore the case to the active calendar in March of 1993. Judge Raggi granted that motion by order dated March 29, 1993.

defense counsel's motion to withdraw, plaintiffs readily concede that they agreed to those adjournments and did not seek any court intervention with regard to discovery until 1995.[8]

Moreover, in June 1993, plaintiffs brought a motion for a default judgment against defendants Briggs Leasing and Briggs Acquisition Corporation, which Judge Johnson granted in March 1994. In their submission in support of that motion, plaintiffs alleged that "mortgages were placed upon the Briggs real estate without any, or inadequate, consideration (or knowing that Briggs was merely a conduit for siphoning off the consideration)." *See* Affidavit of Sidney Bender, dated June 11, 1993. At oral argument, plaintiffs' counsel stated that, at the time plaintiffs made the motion for a default judgment, he was in possession of some of Briggs Leasing's financial statements and tax returns, which showed approximately one million dollars in payments from Briggs Leasing to Mack and Apex Marine in January 1990, but did not reflect any loans by or mortgages to Mack, Berger or Apex Marine. Tr. at 24–26. Nonetheless, despite their suspicion that Briggs Leasing had made payments to Mack and Apex Marine without receiving fair consideration, a suspicion they considered sufficiently well-founded to include in a sworn affidavit to the court, plaintiffs did not notice the depositions of Mack and Berger until 1995.

Plaintiffs offer no adequate explanation as to why they were unable to conduct full discovery in this case prior to 1993, when Mr. Rosen moved for withdrawal. At that point, this litigation had already been pending for eight years. Nor do plaintiffs offer any explanation as to why the court should apply the doctrine of equitable tolling to allow plaintiffs to bring time-barred claims against Bank Leumi or Gary Holman, who are not alleged to have caused discovery delays or to have concealed any information from plaintiffs in this case.

Thus, although plaintiffs complain that they did not learn of the alleged fraudulent conveyances until late 1995, they clearly could have learned of the note and mortgage transactions earlier had they been more diligent in noticing depositions or seeking court intervention regarding discovery. Accordingly, the court declines to apply the doctrine of equitable tolling in such a way as to hold the defendants and proposed defendants responsible for the delays that have occurred in this case.

■ Plaintiffs also urge the court to apply the doctrine of equitable estoppel in this case.

"Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit." *Dillman,* 784 F.2d at 60–61 (quoting *Cerbone,* 768 F.2d at 49–50). Here, plaintiffs claim that they did not have full knowledge of the fraudulent conveyances prior to the running of the statute of limitations. Plaintiffs do not contend that any of the defendants or proposed defendants engaged in conduct that caused plaintiffs to delay bringing suit once they were fully aware of their claims. Accordingly, the equitable estoppel doctrine does not apply.

Plaintiffs next urge the court to use its "inherent power" to relieve them from the application of the statute of limitations in order to "correct the result of the fraud." Relying on *Bornholdt v. Brady,* 869 F.2d 57, 70 (2d Cir.1989), plaintiffs maintain that "there is no time limit on [a] motion based on fraud on the court." In *Bornholdt,* the plaintiff brought a claim for age discrimination and retaliation against his employer, the United States Internal Revenue Service, which the court dismissed on the ground that the IRS Equal Employment Opportunity Office ("IRSEEO") had not rendered a final decision on his claims and that the plaintiff thus had not exhausted his administrative remedies. Unbeknownst to the plaintiff and the court, however, the IRSEEO had, in fact,

---

**8.** In June 1995, plaintiffs moved for a default judgment against Robert Rosenstock as a result of his failure to appear for a deposition in March 1995. The court denied that motion.

decided the plaintiff's age discrimination claim, but failed to inform the plaintiff of its decision for nearly two years. Thereafter, nearly three years after the court dismissed his original complaint, plaintiff brought a second action for age discrimination and retaliation. The district court dismissed the second action on statute of limitations grounds.

On appeal, the Second Circuit reversed, holding that the plaintiff's claims were not time-barred, but rather related back to the original action under Fed.R.Civ.P. 15(c). The court explained that, if the government had apprised the plaintiff and the court in the first action that the IRSEEO had rendered a final decision on plaintiff's administrative claims, the court would have permitted plaintiff to file an amended complaint alleging the existence of that final decision. In addition, the court explained in *dicta* that, even if no relation back doctrine were available, it would, in the exercise of its "equity powers," relieve the plaintiff from judgment under Fed.R.Civ.P. 60(b) and re-open the first action to permit the plaintiff to pursue his discrimination claims. *Id.* The court in *Bornholdt* was especially persuaded by the fact that the government knowingly had allowed the court to proceed based on a representation that was no longer true.

■ *Bornholdt* is distinguishable from the case at bar for at least two reasons. First, *Bornholdt* provides a remedy after judgment pursuant to Rule 60(b), which is not applicable here. Second, unlike the plaintiff in *Bornholdt,* plaintiffs in the instant case do not allege that any of the defendants or proposed defendants have made misrepresentations to the court or have allowed the court to proceed based on false statements of fact or law. Rather, plaintiffs complain that the defendants "have practiced a fraud on this Court" because the purpose of the loan and mortgage transactions was "to make Briggs insolvent so that it [would be] unable to satisfy a judgment to be entered by the Court arising out of the original amended complaint." In other words, plaintiffs seek to bootstrap their time-barred fraudulent conveyance claims onto their federal securities fraud claims because the original defendants are now insolvent and plaintiffs hope to recover judgments against new defendants with deeper pockets. *Bornholdt* provides no such remedy, and the court is aware of no authority that does. Accordingly, the court declines to apply its "equity powers" to relieve plaintiffs from the imposition of the statute of limitations.[9]

Because the court finds that plaintiffs' proposed new claims are barred by the statute of limitations, it need not address the proposed defendants' arguments concerning supplemental jurisdiction.

### Substitution of Executors

As stated above, named plaintiffs Oliver R. Grace and Morgan H. Grace have died since the filing of the amended complaint. Plaintiffs thus seek to substitute named plaintiff Lorraine Grace, as Executrix of the Estate of Oliver R. Grace, for Oliver R. Grace and plaintiff Gerald I. White, as Executor of the Estate of Morgan H. Grace, for Morgan H. Grace in this action. Rule 25 of the Federal Rules of Civil Procedure states:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party.... Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Plaintiffs filed a suggestion of death upon the record for Oliver R. Grace and Morgan H. Grace on August 29, 1996. Accordingly, there being no objection, the motion for substitution of executors is granted.

---

**9.** Plaintiffs' reliance on Judge Learned Hand's decision in *Empire Lighting Fixture Co. v. Practical Lighting Fixture Co.,* 20 F.2d 295 (2d Cir. 1927), is equally misplaced. *Empire Lighting* stands for the proposition that a creditor need not press its claim to judgment before filing to set aside a fraudulent conveyance. Contrary to plaintiffs' argument, that case does not "carve out a special category for fraudulent conveyances" or hold that statutes of limitations may be waived for fraudulent conveyance claims.

*Martin Act Claim*

Finally, plaintiffs seek to drop their original cause of action under the Martin Act, New York General Business Law § 352–c, which they concede is no longer viable under New York State law. There being no objection, that motion is granted.

### CONCLUSION

For the reasons stated above, plaintiffs' motion to amend and supplement their complaint is granted in part and denied in part. Plaintiffs may substitute executors for the two deceased plaintiffs and may relinquish their claim under the Martin Act. Plaintiffs' motion is denied with respect to the remaining proposed amendments.

SO ORDERED.